**2022-2079**

# United States Court of Appeals for the Federal Circuit

---

**RIMCO INC.,**

Plaintiff-Appellant,

***v.***

**UNITED STATES,**

Defendant-Appellee.

---

Appeal from the United States Court of International Trade, No. 21-cv-00537, Chief Judge Mark A. Barnett

---

**CORRECTED PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT, RIMCO INC.**

---

John M. Peterson
*Counsel of Record*
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway Suite 2602
New York, NY 10006
jpeterson@npwny.com
(212) 635-2730

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Avenue, Suite 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

November 23, 2022

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2022-2079

**Short Case Caption** Rimco Inc. v US

**Filing Party/Entity** Rimco Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/15/2022

Signature: /s/ John M. Peterson

Name: John M. Peterson

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Rimco Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Save for Filing

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTEREST ........................................................................ ii

TABLE OF CONTENTS.............................................................................. iii

TABLE OF AUTHORITIES .........................................................................iv

STATEMENT OF RELATED CASES ................................................... vii

JURISDICTIONAL STATEMENT ...........................................................2

STATEMENT OF THE ISSUES.................................................................2

STATEMENT OF THE CASE.....................................................................2

ARGUMENT ..............................................................................................10

I. Standard of Review.................................................................................10

II. The Trade Court's Proposed Administrative Pathway is Unworkable. ........10

III. Commerce Lacks Competence or Expertise to Rule Upon the Constitutionality of its Actions, or to Provide Rimco Effective Relief ........17

IV. A Claim for a Refund of Monies Unconstitutionally Taken by CBP May be Raised by Protest Followed By Litigation Under 28 U.S.C. § 1581(a). ..23

CONCLUSION ...........................................................................................32

## TABLE OF AUTHORITIES

**Cases**

*A.N. Deringer Inc. v. United States*, 66 C.C.P.A. 50 (1979) ..................................24
*Agro Dutch Ind. Inc. v. United States*, 508 F.3d 1024 (Fed. Cir. 2007).................25
*Apex Frozen Foods Pvt. Ltd. v. United States*, 862 F.3d 1322 (Fed. Cir, 2017).....................................................................................................25
Azar v. Ashcroft, 585 F.3d 559 (2d Cir. 2009).......................................................28
*Barron v. Ashcroft,* 358 F.3d 674 (9th Cir. 2004)....................................................19
*Bell BCI Co. v. United States,* 570 F.3d 1337 (Fed. Cir. 2009). ............................10
*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).................................28
*Carr v. Saul*, 141 S. Ct. 1352 (2021). ....................................................................22
*Conoco v. U.S. Foreign Trade Zones Board*, 18 F.3d 1581 (Fed. Cir. 1994).....9, 29
*F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027 (Fed. Cir. 2000). ....................................................................... 11, 13
*Flores v. Garland*, 2022 U.S. App LEXIS 4469 (9th Cir. 2022). ..........................19
*Gallant Ocean (Thail.) Co. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010) 11, 13
*Gete v. INS*, 121 F.3d 1285 (9th Cir. 1997). ..........................................................20
*Goldman v. United States*, 28 C.C.P.A. 162, 166 (1940). ......................................27
*Guess? Inc. v. United States*, 944 F.2d 855 (Fed. Cir. 1991). ................................10
*Interior Airways, Inc. v. Wien Alaska Airlines, Inc*., 188 F. Supp. 107 (D. Ak. 1960).................................................................................................18
*Itochu Bldg. Prods. v. United States*, 733 F.3d 1140 (Fed Cir. 2013)....................25
*Johnson v. Robison,* 415 U.S. 361 (1974) ............................................................20
*KYD, Inc. v. United States*, 607 F.3d 760 (Fed. Cir. 2010) ............................ 11, 13
*Luggage & Leather Goods Mfrs. Assn. v. United States*, 588 F. Supp. 1413 (Ct. Int'l Tr. 1984).........................................................................................9, 29
*Lynteq Inc. v. United States*, 976 F.2d 693 (Fed. Cir. 1992) ..................................10
*Maroszan v. United States*, 852 F.2d 1469 (7th Cir. 1988) .............................. 19, 20
*Matthews v. Eldridge,* 424 U.S. 319 (1976) ..........................................................18
*McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). ......................................... 22, 25
*McGrath v. Weinberger*, 541 F.2d 249 (10th Cir. 1976) ........................... 17, 21, 22
*McKart v. United States*, 395 U.S. 185 (1969) .......................................................21
*Miller & Co. v. United States*, 824 F.2d 961 (Fed. Cir. 1987) ...............................27
*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995). ............. 11, 13
*Nufarm America's Inc. v. United States*, 29 C.I.T. 1317 (2005). ...........................27
*Oestereich v. Selective Service Sys*., 393 U.S. 233 (1968) .....................................19
*Orleans Int'l Inc. v. United States*, 335 F.3d 1375 (Ct. Int'l Tr. 2003)..................26

*Pat Huval Rest. & Oyster Bar Inc. v. United States*, 32 C.I.T. 232 (2008)............26
*Petruska v. Gannon Univ.*, 462 F.3d 294 (3rd Cir. 2006).......................................19
*Swisher Int'l Inc. v. United States*, 205 F.3d 1358 (Fed. Cir. 2000) .............. passim
*Thomson Consumer Elecs. v. United States*, 247 F.3d 1210 (Fed. Cir. 2001). .......28
*Totes-Isotoner Corp. v. United States*, 580 F. Supp. 2d 1371 (Ct. Int'l Tr. 2008)...........................................................................................................26
*United States v. Bajakajian,* 524 U.S. 321 (1997)...............................................20
*United States v. C.O. Mason Inc.*, 51 C.C.P.A. 107 (1964) .................................24
*United States v. Cajo Trading Inc*., 55 C.C.P.A. 61 (1968) ..................................24
*United States v. Fox River Butter Co*., 20 C.C.P.A. 38 (1932) ..............................27
*United States v. U.S. Shoe Corp*., 523 U.S. 360 (1998), ................................. 26, 30
*Wilkie v. Robins*, 551 U.S. 537 (2007)...................................................................28
*Wirtgen Am. Inc. v. United States*, 437 F. Supp 3d 1302 (Ct. Int'l Tr. 2020). .......29
*Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370 (Fed. Cir. 2013)...................................................................................... 12, 13

**Statutes**

19 U.S.C. § 1514 ..................................................................................... passim
19 U.S.C. § 1515 .............................................................................................5
19 U.S.C. § 1592 ...........................................................................................20
19 U.S.C. § 1671 .............................................................................................5
19 U.S.C. § 1675 .............................................................................................8
19 U.S.C. § 1677e ........................................................................... 3, 4, 5, 16
19 U.S.C. §1500 .............................................................................................22
19 U.S.C. §1516A ............................................................................................6
19 U.S.C. §1673 ...............................................................................................5
28 U.S.C. § 1295 ..............................................................................................2
28 U.S.C. § 1581 ..................................................................................... passim
28 U.S.C. § 2107 ..............................................................................................2
28 U.S.C. § 2637 ..................................................................................... passim
28 U.S.C. § 2640 ..........................................................................................7, 9
28 U.S.C. § 2645 ..............................................................................................2
*Customs Courts Act of 1980*, Pub. L. 96-417, 94 Stat. 1727 (1980). ......................25
*Trade Preferences Extension Act of 2015*, Pub. L. 114-27, 129 Stat. 362 (2015) .........................................................................................................12

**Other Authorities**

*Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 86 Fed. Reg. 62,788 (November 12, 2021)............................................................................................................15

*Certain Steel Wheels from the People's Republic of China: Antidumping and Countervailing Duty Order*, 84 Fed. Reg. 24,098 (May 24, 2019) ............ 3, 4, 15

*Certain Steel Wheels from the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination with Final Antidumping Duty Determination*, 83 Fed. Reg. 44,573 (August 31, 2018)........................................................................13

John M. Peterson, *Customs Penalties Under Section 592 of the Tariff Act; Current Practice and the Need for Further Reform*, 18 Vanderbilt J. Trans. Law 679 (1986) ..............................................................................21

William L. Dickey, *Survivals from More Primitive Times; Customs Forfeitures in the Modern Commercial Setting under Sections 592 and 618 of the Tariff Act of 1930,* 7 Law & Policy Int'l. Bus. 691 (1975)........................21

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, counsel for Plaintiff-Appellant Rimco Inc. makes the following statement:

1. Counsel for Plaintiff-Appellant know of no other civil action brought before the U.S. Court of International Trade that was previously before this or any other appellate court under the same or similar title.

2. Counsel for Plaintiff-Appellant is not aware of any actions, currently pending in the U.S. Court of International Trade, which will directly affect or be affected by this Court's decision in the instant appeal.

**2022-2079**

# United States Court of Appeals for the Federal Circuit

**RIMCO INC.,**

Plaintiff-Appellant,

***v.***

**UNITED STATES,**

Defendant-Appellee.

Appeal from the United States Court of International Trade,
No. 21-cv-00537, Judge Mark A. Barnett

## PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT, RIMCO INC.

Plaintiff-Appellant, Rimco Inc. ("Rimco"), in accordance with Rules 28(a) and 32(a) of the Federal Rules of Appellate Procedure and the Rules of Practice of the United States Court of Appeals for the Federal Circuit, hereby submits its principal brief in this appeal.

## JURISDICTIONAL STATEMENT

Plaintiff-appellant Rimco appeals from the final decision and judgment of the United States Court of International Trade ("CIT") in *Rimco Inc., v. United States*, Slip Op. 22-79, dated July 8, 2022, and related judgment. Appx1.

Rimco filed a timely notice of appeal on July 28, 2022 pursuant to 28 U.S.C. §§ 2107 and 2645(c) and Rule 4(a)(4) of the Federal Rules of Appellate procedure. The CIT dismissed this case for lack of subject matter jurisdiction, asserting that it lacked jurisdiction over a Rimco's denied protest pursuant to 28 U.S.C. § 1581(a) and in the alternative lacked jurisdiction under 28 U.S.C. § 1581(i).

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). The appeal was docketed in this Court on August 1, 2022.

## STATEMENT OF THE ISSUES

1. Whether the trial court correctly held that it lacked subject matter jurisdiction to review the denial of Rimco's protest under 28 U.S.C. § 1581(a).

2. In the alternative if this Court should find no jurisdiction under 28 U.S.C. § 1581(a), whether the trial court correctly held that it lacked subject matter jurisdiction under 28 U.S.C. § 1581(i).

## STATEMENT OF THE CASE

This issue in this appeal is whether the CIT erred in dismissing Rimco's complaint alleging constitutional injury against the Government. Plaintiff Rimco, Inc.,

of Neche, North Dakota, is an importer and reseller of wheels for cars, trucks and agricultural vehicles.

At times relevant to this action, between January 21, 2019 and July 3, 2019 the U.S. Department of Commerce (the "Department" or "Commerce"), International Trade Administration ("ITA"), had ordered suspension of liquidation of entries subject to the antidumping duty ("ADD") and countervailing duty ("CVD") orders on *Certain Steel Wheels from the People's Republic of China*, and had directed United States Customs and Border Protection ("CBP" or "Customs"), to collect provisional estimated CVD; or had issued a CVD Order, and directed CBP to collect definitive estimated CVD deposits. *See Certain Steel Wheels from the People's Republic of China: Antidumping and Countervailing Duty Order*, 84 Fed. Reg. 24,098, 24,099 (May 24, 2019) (the "Order" or "*Certain Steel Wheels* ADD/CVD Order").

Commerce calculated the *Certain Steel Wheels* CVD assessment rates on the basis of adverse facts available ("AFA"), 19 U.S.C. § 1677e(b), after two mandatory respondents in the CVD investigation— Xiamen Sunrise Wheel Group Ltd. ("Xiamen Sunrise") and Zhejiang Jingu Co. Ltd.—had declined to cooperate with the investigations and were each assigned CVD rates of 457.10% *ad valorem*. Commerce also assigned an "all others" CVD rate of 457.10% *ad valorem* for all subject wheels shipped by non-reviewed exporters.

Also at times relevant to this action, Commerce had suspended liquidation of entries subject to the Certain Steel Wheels antidumping investigation, and had directed CBP to collect provisional estimated ADD, or had issued an ADD Order, and directed CBP to collect estimated ADD deposits. *See Certain Steel Wheels* ADD/CVD Order at 24,098. Because Commerce found that no selected "mandatory respondent" had participated to its satisfaction in the ADD investigation, it issued an ADD margin of 231.70% *ad valorem*, which not only applied to the defaulting respondents, but to exports made by "all other" producers and exporters as well.

In assigning these AFA countervailing duty and antidumping rates, Commerce acted pursuant to Section 776 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677e(d)(3), which provides:

> **(3) No obligation to make certain estimates or address certain claims**
>
> If the administering authority uses an adverse inference under subsection (b)(1)(A) in selecting among the facts otherwise available, the administering authority is not required, for purposes of subsection (c) or for any other purpose—
>
>> (A) to estimate what the countervailable subsidy rate or dumping margin would have been if the interested party found to have failed to cooperate under subsection (b)(1) had cooperated; or
>>
>> (B) to demonstrate that the countervailable subsidy rate or dumping margin used by the administering authority reflects an alleged commercial reality of the interested party.

In setting these rates, Commerce made no attempt to estimate the rate which would have resulted had interested parties cooperated in the proceeding, nor which would have reflected the commercial reality of any such interested party. 19 U.S.C. § 1677e(d)(3). The AFA rates were applied to goods exported by reviewed and non-reviewed exporters alike. The rates were not based on any measure of actual subsidization of the subject merchandise, as contemplated by the countervailing duty law[1], nor on any actual comparison of export prices and normal values, as contemplated by the antidumping statute[2].

Rimco made various consumption entries of goods subject to the *Certain Steel Wheels* ADD and CVD Orders which were assessed by CBP in liquidation with combined countervailing and antidumping duty rates as high as 688% *ad valorem*. On March 16, 2021, Rimco timely protested these charges as "excessive fines" in contravention of the Eighth Amendment to the United States Constitution. CBP denied Rimco's protest on March 30, 2021. Thereafter Rimco timely commenced this action pursuant to 19 U.S.C. § 1515, invoking the Trade Court's exclusive subject

---

[1] *See* 19 U.S.C. § 1671, which anticipates that the administering authority will "determines that the government of a country or any public entity within the territory of a country is providing, directly or indirectly, a countervailable subsidy with respect to the manufacture, production, or export of a class or kind of merchandise imported, or sold (or likely to be sold) for importation, into the United States".

[2] *See* 19 U.S.C. §1673, anticipating imposition of a special duty in cases where the administering authority determines that a class or kind of goods is being "sold in the United States at less than its fair value".

matter jurisdiction in 28 U.S.C. § 1581(a) to review actions challenging CBP's denial of protests[3].

The Government moved to dismiss Rimco's action for lack of subject matter jurisdiction on January 28, 2022. Following briefing and argument, the CIT granted the Government's motion on July 8, 2022, and dismissed this action. Appx1.

In its decision and order dismissing this case for lack of subject matter jurisdiction, the CIT said that CBP's liquidation of the entries at issue was not a protestable decision, and that the court did not possess jurisdiction to hear this claim pursuant to 28 U.S.C. § 1581(a). In addition, the Court found that it lacked 28 U.S.C. § 1581(i) jurisdiction to hear Rimco's claims.

Rather, the CIT held that Rimco was required to raise its constitutional claims before Commerce in administrative antidumping or countervailing duty investigations or annual review proceedings. If dissatisfied with the results of those proceedings, the Trade Court held, Rimco was required to commence an action under Section 516A of the Tariff Act of 1930, as amended 19 U.S.C. §1516A, which the Court

[3] Rimco's Complaint also alleged, in the alternative, that the CIT could entertain jurisdiction over its case pursuant to that court's 28 U.S.C.§ 1581(i) jurisdiction,

would entertain under its 28 U.S.C. § 1581(c) jurisdiction, reviewing Rimco's constitutional claim on the basis of the record before Commerce, and applying the deferential standard of judicial review set out at 28 U.S.C. § 2640(b)[4].

Having failed to exhaust its administrative remedies by raising the issue with Commerce and proceeding to court under 28 U.S.C. § 1581(c), the lower court held, Rimco could not invoke the CIT's protest jurisdiction by challenging the actual assessment of monies by CBP.

## SUMMARY OF THE ARGUMENT

Plaintiff, Rimco, Inc., based in Neche, North Dakota, imported truck wheels into the United States under cover of various consumption entries filed with CBP. Upon liquidation, CBP, acting on instructions from Commerce, assessed the entries with duty at a combined rate of as much as 688.80% *ad valorem*, representing 457.10% in countervailing duties and 231.70% in antidumping duties, assessed pursuant to CVD and ADD orders, respectively, which had been entered against Certain Steel Wheels from the People's Republic of China.

[4] 28 U.S.C. § 2640(b) provides that "In any civil action commenced in the Court of International Trade under Section 516A, the court shall review the matter as specified in subsection (b) of said section." Subsection (b), in turn, provides that the reviewing court shall uphold agency action which is found to be supported by substantial evidence on the record.

Rimco paid all liquidated duties, taxes and fees, as required by 28 U.S.C. § 2637(a), and timely protested the exactions in accordance with 19 U.S.C. § 1514(a)(3), asserting by protest that the exactions represented unconstitutional "excessive fines" which violated the Eighth Amendment to the United States Constitution. This action was taken in reliance on this Court's precedent holding that unconstitutional assessments made by CBP may be challenged by protest. *See, e.g., Swisher Int'l Inc. v. United States*, 205 F.3d 1358, 1361 (Fed. Cir. 2000) ("*Swisher*"). When CBP denied the protest, plaintiff timely commenced this action to challenge the denial, invoking the CIT's 28 U.S.C. § 1581(a) exclusive jurisdiction over protest denial actions.

The Trade Court, however, disregarding this precedent, dismissed Rimco's action for want of subject matter jurisdiction, finding that plaintiff had failed to exhaust administrative remedies. Specifically, the CIT found, plaintiff should first have raised its claim of unconstitutionality by participating in the CVD and AD investigations, or in 19 U.S.C. § 1675 "annual reviews" of the CVD and ADD orders conducted by Commerce, and raising its claims of unconstitutionality before that agency. Assuming that Commerce made a determination of constitutionality,[5] the

[5] The Trade Court did not address the possibility that Commerce might decline to offer an opinion on constitutionality, since agencies generally lack institutional competence to decide constitutional matters. Indeed, parties who raise constitutional claims before Federal agencies frequently receive no determinations on these claims,

Trade Court said, it could judicially review and correct such Commerce determination in a pre-assessment action commenced under 28 U.S.C. § 1581(c). Such actions are reviewed on the basis of the record developed before the agency, and using a deferential "substantial evidence" standard of review. 28 U.S.C. § 2640(b).

As discussed herein, Commerce has no institutional competence or expertise to decide the *constitutionality* of its determinations. Any constitutional determination it might render could be overturned on that basis alone. Whether an exaction made by CBP violates the Eighth Amendment's "Excessive Fines" prohibition is a legal determination to be made by a court. Indeed, since pursuing the administrative remedy identified by the Trade Court would be both futile and inappropriate, that court could have exercised its statutory discretion under 28 U.S.C. § 2637(d) to waive the exhaustion of *any* administrative remedies. *See, e.g., Conoco v. U.S. Foreign Trade Zones Board*, 18 F.3d 1581, 1587-88 (Fed. Cir. 1994); *Luggage & Leather Goods Mfrs. Assn. v. United States*, 588 F. Supp. 1413, 1421 (Ct. Int'l Tr. 1984). This would have extended to waiving the 19 U.S.C. § 1514(a) protest remedy.

However, where, as here, the Tariff Act provides a protest procedure by which plaintiff may raise a claim of unconstitutional exaction, a litigant may present its

since the agency decides that constitutional claims are beyond its competence. *Weinberger v. Salfi*, 422 U.S. 749, 794 (1975).

claim using that procedure—rather than invoking the Trade Court's 28 U.S.C. § 1581(i) "residual" jurisdiction (requiring that the court fashion a new remedy). While the 19 U.S.C. § 1514(a) protest procedure might itself be described as "futile," since CBP also lacks institutional competence to make constitutional determinations, it is nonetheless a recognized pathway for seeking judicial review of an unconstitutional exaction as this Court recognized in *Swisher, supra*. The Trade Court erred in dismissing this action.

## ARGUMENT

### I. Standard of Review

This Court reviews legal holdings *de novo* and examines factual findings for clear error. *Bell BCI Co. v. United States,* 570 F.3d 1337, 1340 (Fed. Cir. 2009). The Court also reviews the lower court's interpretation of statutory provisions *de novo. Lynteq Inc. v. United States*, 976 F.2d 693, 696 (Fed. Cir. 1992); *Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed. Cir. 1991).

### II. The Trade Court's Proposed Administrative Pathway is Unworkable.

As an initial matter, we note that the administrative pathway outlined by the Trade Court is not a workable way for an importer such as Rimco to raise a claim of unconstitutionality.

Rimco's claims that the CVD and ADD rates assessed against it are unconstitutional "excessive fines" results from Commerce's decision to base the rates on

AFA. The AD statute allows Commerce to base rates on AFA when a respondent in a proceeding declines to cooperate in whole or in part, or fails to cooperate with the agency to the best of its ability.

Historically, antidumping and countervailing duties, including the application of AFA rates, were remedial in nature, rather than punitive. *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995). "[A]n antidumping rate based on AFA is designed "to provide respondents with an incentive to cooperate, not to impose punitive … margins," *F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000). "[A]n AFA dumping margin determined *in accordance with the statutory requirements* is not a punitive measure, and the limitations applicable to punitive damages assessments therefore have no pertinence to duties imposed based on lawfully derived margins." *KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir. 2010) (emphasis added).

Even under prior law, however, this Court have found that particular applications of AFA inferences can indeed cross the line from being remedial and become punitive. In *Gallant Ocean (Thail.) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010), this Court said "an AFA rate must be 'a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance.'" *Id.* This Court found that Commerce's AFA rate of 57.64% *ad valorem* (less than 10% of the combined rates at issue here) was punitive in view

of the co-operative respondents' dumping rates and because a "rate over five times the highest rate imposed on similar products is far beyond an amount sufficient to deter Gallant and other uncooperative respondents from future non-compliance." *Id.* at 1324. Similarly, in *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370, 1373 (Fed. Cir. 2013), this Court held that deriving an "all others" rate—the type of rate applied to Rimco in this case—from an AFA rate might be a permissible methodology, but not if the AFA rates (and resulting "all others" rate) were not drawn to reflect economic reality.

Historically, then, an excessive AFA rate could be struck down on statutory grounds, and Commerce could be directed to redraw rates in conformity with statutory requirements.

However, Section 502 of the Trade Preferences Extension Act of 2015, Pub. L. 114-27, 129 Stat. 362 (2015) ("TPEA"), amended the Tariff Act of 1930 in a way which freed Commerce from considering commercial reality when setting AFA rates. Section 502(d)(3), provides:

> (3) NO OBLIGATION TO MAKE CERTAIN ESTIMATES OR ADDRESS CERTAIN CLAIMS. —If the administering authority uses an adverse inference under subsection (b)(1)(A) in selecting among the facts otherwise available, the administering authority is not required, for purposes of subsection (c) or for any other purpose—
>
> (A) to estimate what the countervailable subsidy rate or dumping margin would have been if the interested party found to have failed to cooperate under subsection (b)(1) had cooperated; or

> (B) to demonstrate that the countervailable subsidy rate or dumping margin used by the administering authority reflects an alleged commercial reality of the interested party.

This truly remarkable statute empowers a Federal agency, Commerce, to depart from "commercial reality" in making an economic/taxing decision. A punitive margin imposed as a result of the application of AFA no longer violates the statute[6]. If a party on whom such taxes are imposed wishes to challenge the imposition as punitive, its only resort is to the "excessive fines" provision of the Eighth Amendment.

That the method for raising a constitutional challenge suggested by the Trade Court is unworkable is illustrated by the countervailing duty investigation which resulted in the 457.10% *ad valorem* rate assessed against Rimco. In its preliminary subsidy determination in the investigation,[7] Commerce found, on the basis of information supplied by one mandatory respondent, Xiamin Sunrise, received some countervailable benefits under certain programs and not under others, and calculated a preliminary countervailing duty margin of 58.75% *ad valorem* for this firm. It found that the other mandatory respondent, Zhejiang Jinyu, did not cooperate, and assigned

---

[6] In this respect, Section 502 of the Trade Preferences Extension Act has effectively overruled this Court's decisions in cases such as *NTN Bearing, Gallant Ocean, F. Lii de Cecco, Yangzhou Bestpak and KYD, supra.*

[7] *Certain Steel Wheels from the People's Republic of China: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination with Final Antidumping Duty Determination,* 83 Fed. Reg. 44,573 (August 31, 2018).

it an AFA rate of 172.51% *ad valorem*—one presumably already calculated to deter firms from declining to provide Commerce with requested information. It established an "all others" rate of 58.75% *ad valorem*, which covered shipments from Rimco's suppliers.[8]

In its final determination, however, Commerce disregarded the information provided by Xiamin Sunrise (which had withdrawn from the investigation). Commerce also reconsidered its view of what AFA rate would be sufficient to deter respondents from failing to declare information, increasing it from 172.51% *ad valorem* to 457.10% *ad valorem*.[9]

The issuance of the Final Determination was the *first* indication that Commerce intended to base the "All Others" rate on AFA, rather than a lawful calculated rate.[10] By the time this first indication was made, the time for interested parties to appear in the investigation or provide factual information or argument had long since

---

[8] The "all others" rate in the preliminary determination was based on the calculated rate for Xiamin Sunrise, since "all others" rates could not be based on zero or AFA rates. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1373 (Fed. Cir. 2013).

[9] *Certain Steel Wheels From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 84 Fed. Reg. 11,744 (March 28, 2019). Why the "Adverse Facts Available" rate applied to Zhejiang Jinju should increase from 172.51% *ad valorem* to 457.10% *ad valorem* when no new facts were adduced from that company, is something of a mystery.

[10] Rimco notes that a correctly calculated CVD or ADD rate would not be susceptible to constitutional challenge under the Eighth Amendment.

passed. *Certain Steel WheelsADD/CVD Order*. Having not been an "interested party" who was a "party to the proceeding," Rimco would have lacked standing to commence or participate in any 28 U.S.C. § 1581(c) lawsuit challenging the determination.

In many instances, the AFA rate applied to an importer will have been set long ago, in an earlier segment of ADD or CVD proceedings before Commerce, and there will be nothing an importer such as Rimco can do to challenge it before that agency.[11]

To be clear: as an importer, Rimco has no factual information regarding foreign pricing or subsidies on which Commerce could base a new or different ADD or CVD margin. Its claim is purely constitutional, i.e., that the rate previously set by Commerce and applied to Rimco by CBP is so excessive as to offend the Eighth Amendment's "excessive fines" provision. There is no reason why this purely legal argument should be required to be presented to Commerce which, as noted below,

[11] This was demonstrated by Rimco's attempted participation in an annual review proceeding regarding the countervailing duty order issued against Steel Trailer Wheels from China. Rimco requested a review, for the purpose of asking Commerce to set an "all others" rate not based on AFA, but as no exporter elected to participate in the review, Commerce disregarded Rimco's request, and finalized its determination with CVD margins of 388.31% *ad valorem* determined with respect to two previously-reviewed respondents. *See Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 86 Fed. Reg. 62,788 (November 12, 2021).

lacks institutional competence to judge the constitutionality of its own determinations.[12] While the agency may adjudge the propriety of its action against the governing statute[13], the propriety of its action as a constitutional matter is beyond its ken. Indeed, for this reason, Commerce might appropriately decline to address any constitutional claim Rimco might raise in an investigation or review proceeding, leaving a reviewing court convened under 28 U.S.C. § 1581(c) no decision to review.

Thus, the Trade Court's notion that Rimco could have vindicated its interests by presenting its Constitutional claims to Commerce in the course of that agency's proceeding is naïve and unrealistic. As demonstrated below, this course of action was not required for Rimco to raise its Constitutional claim, and the Trade Court erred in so holding, and in disregarding this Court's holding in *Swisher* and other cases.[14]

---

[12] Nor is Rimco required to participate in administrative proceedings to try to beg the agency not to issue an unconstitutional rate, particularly when the rate was set in earlier proceedings.

[13] In this case, the governing statute, 19 U.S.C. §1677e(d)(3), which (remarkably) frees Commerce from even considering "commercial reality" in setting an AFA rate, is completely unbounded by regulatory guardrails, leading one to question if the statute even *could* be violated by even the wildest rate calculation.

[14] To be further clear, this is not an instance where Rimco asserts that the Trade Court abused its 28 U.S.C. § 2637(d) discretion to waive exhaustion of administrative remedies. What Rimco contents is that presenting a constitutional claim to Commerce, and then for judicial review on the basis of a record and deferential standard of review in a 28 U.S.C. § 1581(c) lawsuit is not a viable remedy, and the lower court erred as a matter of law in ruling otherwise. Rimco has not asked the Court to

## III. Commerce Lacks Competence or Expertise to Rule Upon the Constitutionality of its Actions, or to Provide Rimco Effective Relief

Requiring Rimco (and similarly-situated parties) to present their claims of unconstitutional action to the agency which took the action is improper, since agencies—in this case Commerce—lack the competence and expertise to opine on constitutional issues, or, in this case, to offer meaningful relief.

As noted in *McGrath v. Weinberger*, 541 F.2d 249, 251-52 (10th Cir. 1976):

> It is axiomatic that a litigant must exhaust his administrative remedies, if such remedies exist, as a prerequisite to invoking the jurisdiction of the federal court. *Martinez v. Richardson*, 472 F.2d 1121 (10th Cir. 1973); see also *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 82 L. Ed. 638, 58 S. Ct. 459 (1938). The clear language of the rule requiring exhaustion of administrative remedies before seeking judicial review does not, however, render the rule simple in application. It has been said, and we believe pertinently so, that "A fundamental distinction must be recognized between constitutional applicability of legislation to particular facts and constitutionality of the legislation … We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation." *Administrative Law Treatise*, Davis, Vol. 3, § 20.04; see also *Public Utilities Commission of California v. United States*, 355 U.S. 534, 2 L. Ed. 2d 470, 78 S. Ct. 446 (1958).

The doctrine of "administrative applicability" is invoked when there is a possibility that the agency might be able to dispose of an issue on other than constitutional grounds:

---

waive exhaustion of the protest remedy, so 28 U.S.C. § 2637(d) is not implicated in this appeal.

> "If an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued. But where the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought.' *Public Utilities Commission of State of California v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470; 3 Davis, *Administrative Law Treatise*, p. 74.

*Interior Airways, Inc. v. Wien Alaska Airlines, Inc*., 188 F. Supp. 107, 110 (D. Ak. 1960). However, even if Rimco could have joined in the Commerce proceeding which set the CVD and AD rates, it would have been impossible for the agency to render a determination of constitutionality when wielding statutory power which expressly relieves it of the obligation to consider the "commercial reality" of the interested party. Commerce could simply affirm any AFA determination as valid under its governing statute. Under such circumstances, exhaustion of administrative remedies is not required.

While exhaustion may be required if the statute expressly requires the litigant to obtain a final administrative determination before proceeding to court, exhaustion of administrative remedies is not required for constitutional claims. *Matthews v. Eldridge,* 424 U.S. 319, 330-31 (1976). In any event, since the decision challenged in this case is the exaction of monies from plaintiff, and that exaction was performed by CBP, Rimco has exhausted administrative protest remedies specified in 19 U.S.C. § 1514.

Moreover, Commerce has no institutional competence or expertise to determine constitutional questions, including those arising under the Eighth Amendment. Constitutional challenges not within the competence of administrative agencies to decide are exempt from administrative remedy exhaustion requirements. *Barron v. Ashcroft,* 358 F.3d 674, 678 (9th Cir. 2004); *Flores v. Garland*, 2022 U.S. App LEXIS 4469, at *4-5 (9th Cir. 2022).

Where, as here, an agency has no special expertise to resolve Eighth Amendment claims, litigants should not be required to raise their claims before the agency. *Petruska v. Gannon Univ.*, 462 F.3d 294, 309 (3rd Cir. 2006) (agencies have no expertise to address First Amendment claims). In this regard, "the principle of exhaustion may exclude certain constitutional challenges that are not within the competence of the administrative agency to decide," such as due process claims, "but only if they involve more than 'mere procedural error' that the administrative tribunal could remedy." *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004).

While courts are understandably reluctant to investigate fact bound, discretionary determinations of an agency's decision-making process, they must be equally reluctant to license "free-wheeling agencies [to mete] out their own brand of justice." *Maroszan v. United States*, 852 F.2d 1469, 1477 (7th Cir. 1988) (citing *Oestereich v. Selective Service Sys.*, 393 U.S. 233, 237 (1968)). Thus, as explained in *Maroszan*, *supra*, "whatever the statute precludes … it does not preclude judicial

review of the constitutionality of the legislation," 852 F.2d at 1474, or of alleged **"unconstitutional administrative actions taken pursuant to that legislation."** *Id.* at 1476; *see also, Johnson v. Robison,* 415 U.S. 361, 367-68 (1974); *Gete v. INS*, 121 F.3d 1285, 1291-92 (9th Cir. 1997).

Whether an agency determination constitutes an excessive fine in violation of the Eighth Amendment is subject to *de novo* review by the courts. The Supreme Court has noted that "the touchstone of the constitutional inquiry under the Excessive Fines Clause of the Eighth Amendment is the principle of proportionality: the amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian,* 524 U.S. 321, 334 (1997). **Courts** must perform "the proportionality determination *de novo*, must compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Id.* at 336-37. In this case, multi-confiscatory AFA duty rates equal to as much as 688% *ad valorem* of the value of the goods imported serve no relationship to the "offense that it is designed to punish," and are excessive in violation of the Eighth amendment—particularly when applied to an innocent importer such as Rimco.[15]

---

[15] By way of comparison, the maximum penalty which may imposed under Section 592 of the Tariff Act of 1930, 19 U.S.C. § 1592, for the importation of goods by means of fraudulent false statements or acts is 100% of the value of the imported

Given the need for a *de novo* judicial determination of proportionality, the Trade Court's holding that Rimco should have contested the duty rates in a Commerce proceeding which is judicially reviewed under 28 U.S.C. § 1581(c) on the basis of an administrative record, and using a deferential standard of judicial review, makes no sense. This type of exhaustion is not required where "[t]he agency's expertise would not aid the court in ruling on the matter of constitutional law involving the due process claim; a detailed record regarding the factual background from which this controversy arose would not aid the courts in ruling on the constitutionality of these procedures inasmuch as the issue is one of law." *McGrath v. Weinberger*, 541 F.2d 249, 252-53 (10th Cir 1976) (citing *McKart v. United States*, 395 U.S. 185 (1969)).[16]

---

goods. Section 592 penalties have long been considered among the harshest in American law, and certainly the harshest under the Customs laws. *See* John M. Peterson, *Customs Penalties Under Section 592 of the Tariff Act; Current Practice and the Need for Further Reform*, 18 Vanderbilt J. Trans. Law 679 (1986); William L. Dickey, *Survivals from More Primitive Times; Customs Forfeitures in the Modern Commercial Setting under Sections 592 and 618 of the Tariff Act of 1930,* 7 Law & Policy Int'l. Bus. 691 (1975).

[16] Administrative exhaustion of the type specified by the Trade Court is also useless where, as here, Rimco's imports were made after the conclusion of Commerce proceeding in which the challenged rates were set, and the company had no opportunity to appear in or participate in such proceeding.

Indeed, the Supreme Court recently reminded us that it "has often observed that agency adjudications are generally ill suited to address constitutional challenges." *Carr v. Saul*, 141 S. Ct. 1352, 1360 (2021). Furthermore, the Trade Court, in an action heard under its 28 U.S.C. § 1581(c) jurisdiction, would have no power to provide plaintiff with effective relief on its constitutional claim. Plaintiff's entries, and the assessments made against it, are not before the Court in such a lawsuit. Neither Commerce nor the Court could order a refund of monies[17]. The Trade Court can only uphold the Commerce's determination as supported by substantial evidence, or remand it to the agency for further proceedings. It cannot provide a plaintiff such as Rimco with affirmative relief from an unconstitutional taking of its money. The inadequacy of the prescribed administrative relief in such a proceeding is yet another reason why exhaustion of such a procedural remedy is not required in this case. *McGrath v. Weinberger*, 541 F.2d 249, 251-52 (10th Cir. 1976). "We need not give an agency the opportunity for error correction that it is incapable of providing—*i.e.,* where it is not empowered to provide effective relief." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). The relief sought in this case is the refund of monies assessed as unconstitutional Eighth Amendment excessive fines. Commerce is incapable of

[17] Oddly, judgments in 28 U.S.C. § 1581(c) cases are not self-executing. It falls to the Commerce Department to provide public notice of the Trade Court's ruling, and to direct CBP to make final assessments of duties – using the protest liquidation process in 19 U.S.C. §1500.

providing that relief, as it never collects or refunds any duties.[18] Rather, the funds are collected by CBP, whose assessment was timely protested in this case.

Because Commerce lacks the institutional competence to judge the constitutionality of its actions, because the agency's procedures are not suited to resolving constitutional questions, and because the agency is not capable of rendering effective relief, the Trade Court erred in holding that Rimco was required to participate in (long-concluded) proceedings before Commerce, and raise its constitutional claims before the Trade Court in a review action brought under 28 U.S.C. § 1581(c).

## IV. A Claim for a Refund of Monies Unconstitutionally Taken by CBP May be Raised by Protest Followed By Litigation Under 28 U.S.C. § 1581(a).

Unconstitutional exactions made by Customs in the liquidation of import entries have always been subject to challenge by protest. Section 514(a) of the Tariff Act of 1930, as amended 19 U.S.C. § 1514(a), provides that determinations "adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same" as to various subjects, including "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury," 19 U.S.C. § 1514(a)(3), "shall be final and conclusive upon all persons (including the United States and any

[18] This fact also calls into question whether a constitutional injury claim is ripe for judicial review in a 28 U.S.C. § 1581(c) action and whether, in the absence of an actual assessment, a plaintiff has suffered a constitutional injury-in-fact.

officer thereof) unless a protest is filed in accordance with this section." *Id.* at § 1514(a)(7). Challenges to the legality of "orders and findings entering into an assessment" include challenges to the constitutionality of such orders and findings. *Id.* § 1514(a).

Courts at one time took the position that a liquidation based on an unconstitutional provision of a statute was not a final legal liquidation, and need not be protested, for such a "void liquidation" did not start the running of the protest statute of limitations. It was believed that administrative housekeeping actions were required to bow to constitutional supremacy. *See e.g., United States v. C.O. Mason Inc.*, 51 C.C.P.A. 107, 114 (1964), cert. den. 379 U.S. 999 (1965); *see also United States v. Cajo Trading Inc.*, 55 C.C.P.A. 61 (1968), cert. den. 393 U.S. 827 (1968) (assessment based on void Presidential Proclamation). However, this concept of a "void liquidation" was supplanted by the enactment of 19 U.S.C. § 1514(a) in 1970.[19]

---

[19] In *A.N. Deringer Inc. v. United States*, 66 C.C.P.A. 50, 55 (1979), this Court's predecessor held:

> We do not find it necessary to overrule *Cajo* and *Mason* since the Congress has already effectively done so. As noted above, 19 U.S.C. § 1514(a)(1970) makes it quite clear that timely protests must be filed in order to challenge "decisions of the appropriate Customs officer, including the legality of all orders and findings entering into same" (Italic ours). The demise of the "void liquidation" rule is further highlighted by the omission from the Tariff Act, as amended in 1970, of the very statutory language – "as provided by law" – relied upon by the court in Mason. The appropriate Customs official is now simply required to "liquidate the entry of such merchandise" (19 U.S.C. § 1500(d) (1970)

Following the enactment of 19 U.S.C. § 1514(a) in 1970, therefore, it was clear that any challenge to a Customs exaction, even one challenged as unconstitutional, was required to be initiated by the filing of a protest under that statute.

Two alterations to this statutory scheme were made by the *Customs Courts Act of 1980*, Pub. L. 96-417, 94 Stat. 1727 *et seq* (1980). First, the Court's jurisdiction and powers were expanded, to reflect its newly-conferred status as an Article III Court with all powers in law and equity of a Federal District Court. This expansion included the creation of a new "residual" grant of subject matter jurisdiction contained in 28 U.S.C. § 1581(i). Second, Congress enacted 28 U.S.C. § 2637(d), which provides that "[i]n any civil action not specified in this section, the [CIT] shall, where appropriate, require the exhaustion of administrative remedies." On numerous occasions, the CIT has exercised its discretionary power under 28 U.S.C. § 2637(d) to waive the exhaustion of administrative protest remedies, when it finds that requiring the exhaustion of such remedies to be "futile" or "inappropriate.[20] This

> rather than liquidate " … as provided by law" (19 U.S.C. § 1505 (1930)). Removal of this stipulation further enhances what we perceive to be a pervasive replacement throughout the statute to channel all non-excepted protests through section 1514 even when those protests go to the legality of a Customs official's action.

[20] See, e.g., *Apex Frozen Foods Pvt. Ltd. v. United States*, 862 F.3d 1322, 1332 (Fed. Cir, 2017); *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed Cir. 2013), citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). This Court has recognized an exception to exhaustion for "pure legal questions". *Agro Dutch Ind. Inc. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007).

has included cases where plaintiffs have challenged the constitutionality of a statute imposing a charge or exaction, where protest would be "futile", since an administrative agency does not have the power to hold an Act of Congress unconstitutional.[21]

That being said, a plaintiff's determination to pursue an administrative remedy, even though the pursuit be futile and unsuccessful, does not unsuit it. In this regard, 28 U.S.C. § 1581(a) vests the Trade Court with jurisdiction "in any civil action commenced to contest [Customs'] denial of a protest." *Totes-Isotoner Corp. v. United States*, 580 F. Supp. 2d 1371, 1375 (Ct. Int'l Tr. 2008). An importing plaintiff such as Rimco may use the protest remedy to challenge Customs' exaction of monies in an assessment, "including the legality of all orders and findings entering into same." 19 U.S.C. § 1514(a). The election of how to proceed rests with the plaintiff.

Thus, although the United States Supreme Court held that plaintiffs could challenge the constitutionality of the export Harbor Maintenance Tax ("HMT") under the CIT's residual jurisdiction, 28 U.S.C. § 1581(i), without exhausting the § 1514(a) protest remedy, *see United States v. U.S. Shoe Corp*., 523 U.S. 360 (1998), this Court thereafter held that plaintiffs could challenge the constitutionality of the

[21] *See e.g., Totes-Isotoner Corp. v. United States*, *supra* (challenge to constitutionality of various tariff provisions asserted to violate constitutional "equal protection" guarantees); *Orleans Int'l Inc. v. United States*, 335 F.3d 1375, 1380 (Ct. Int'l Tr. 2003); *Pat Huval Rest. & Oyster Bar Inc. v. United States*, 32 C.I.T. 232 (2008) (challenge to constitutionality of "Byrd Amendment").

very same HMT by protesting Customs' refusal to refund the tax and, upon denial of its protest, initiating suit in the Trade Court under 28 U.S.C. § 1581(a) to challenge such denial. *Swisher*, 205 F.3d at 1365. Numerous litigants recovered export HMT payments by filing protests and litigating in the Trade Court under 28 U.S.C. § 1581(a).[22]

It is well-established law that a protest against Customs' liquidation of an entry may be a vehicle for obtaining a court decision that an act of Congress is unconstitutional, *see e.g.*, *United States v. Fox River Butter Co*., 20 C.C.P.A. 38, 45 (1932); *see also Goldman v. United States*, 28 C.C.P.A. 162, 166 (1940).

While the Trade Court in the modern era, acting in reliance on 28 U.S.C. § 2637(d), has generally held that a litigant may seek waiver of exhaustion of administrative remedies when it challenges the constitutionality of a statute, the same presumption does not necessarily attach where, as here, the plaintiff contests an administrative action as unconstitutional. *See e.g., Nufarm America's Inc. v. United States*, 29 C.I.T. 1317, 1330-31 (2005). In that case, the Trade Court held that bypassing the Customs protest scheme to invoke its § 1581(i) "residual" jurisdiction was not appropriate, citing *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987). Where the constitutional challenge is to an administrative, rather than a

---

[22] *See e.g., Sony Elecs. Inc. v. United States*, 26 C.I.T. 286 (2002).

legislative action, it may be more appropriate to encourage "further factual development within the agency." *Thomson Consumer Elecs. v. United States*, 247 F.3d 1210, 1214 (Fed. Cir. 2001). However, the fact that CBP, having been given the opportunity, could not find a non-constitutional ground on which to dispose of Rimco's protest does not unsuit Rimco with respect to its constitutional Eighth Amendment claim. As this Court noted in *Swisher, supra*, even where the challenge is to the constitutionality of a statute, and a protest is essentially futile because CBP lacks authority to grant it, a litigant does not waive any rights by pursuing the protest remedy. The lower court's decision in this action disregards *Swisher* and other binding Circuit precedent.

In this case, plaintiff's decision to exhaust the protest remedy is prudent. Congress' preferred statutory mechanism for importers to challenge unlawful, or unconstitutional, exactions of money is fashioned at 19 U.S.C. § 1514(a). Plaintiff's decision to use that mechanism is in accordance with Congressional intent, and spares the courts the need to fashion an original remedy should it rule in plaintiff's favor.[23]

---

[23] As noted in *Azar v. Ashcroft*:

> Where Congress has selected a remedy for constitutional injuries, the courts should defer to its legislative wisdom; … where Congress has not considered a remedy, however, a court must use its judgment concerning the best way to supplement a constitutional guarantee.

585 F.3d 559, at 622 (2d Cir. 2009) (citing *Wilkie v. Robins*, 551 U.S. 537, 550 (2007)); *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 396-97 (1971)). Here,

Finally, the Trade Court erred when it suggested that there was no "decision" by CBP against which a protest would lie. By statute, 19 U.S.C. § 1500, Customs is required to determine the rate and amount of duty applicable to an entry of imported merchandise, and render a decision regarding same through liquidation.[24] This includes entries with antidumping and countervailing duty assessments, which are required by law to go through the liquidation process. By statute, 19 U.S.C. § 1514(a), that required decision, together with the legality of all orders and findings merging into same, is subject to protest. Customs' liquidation decision is protestable, even if it reflects directions provided by another agency and carried out ministerially by CBP. *Wirtgen Am. Inc. v. United States*, 437 F. Supp 3d 1302, 1307 (Ct. Int'l Tr. 2020).[25] That CBP may be bound by statute to carry out an act deemed unconstitutional may allow an aggrieved party to seek waiver of administrative remedies and

---

where a constitutional injury is inflicted by CBP, by making a charge deemed an excessive fine, it is appropriate for plaintiff to raise its claim using the statutory protest remedy provided by Congress.

[24] Liquidation is a mandatory and essential act. It determines that an importer is definitively liable to pay certain amounts, or to receive certain refunds. It triggers the time period for protesting decisions, it determines when delinquency interest on bills for supplemental duties is due, it determines when CBP may make a demand on a surety.

[25] An agency's lack of discretion in a matter may, in certain cases, justify a judicial waiver of exhaustion of administrative remedies pursuant to 28 U.S.C. §2637(d), on the ground that requiring exhaustion would be futile or inappropriate. *See, e.g., Conoco v. U.S. Foreign Trade Zones Board*, 18 F.3d 1581 (Fed. Cir. 1994); *Luggage & Leather Goods Mfrs. Assn. v. United States*, 588 F. Supp. 1413, 1421 (Ct. Int'l Tr.

lodge a complaint directly with this Court, *U.S. Shoe Corp. v. United States*, 523 U.S. 360, 365 (1998), it may nonetheless raise its claims by pursuing its protest remedy, should it elect to do so. *Swisher,* 205 F.3d at 1360.

Finally, the only decisions **not** protestable post-liquidation are those identified in Section 514(b) of the Tariff Act, which provides:

> **(b) Finality of determinations**
>
> With respect to determinations made under section 1303 of this title or subtitle IV of this chapter which are reviewable under section 1516a of this title, determinations of the Customs Service are final and conclusive upon all persons (including the United States and any officer thereof) unless a civil action contesting a determination listed in section 1516a of this title is commenced in the United States Court of International Trade, or review by a binational panel of a determination to which section 1516a(g)(2) of this title applies is commenced pursuant to section 1516a(g) of this title and article 1904 of the North American Free Trade Agreement or the United States-Canada Free-Trade Agreement.

The decision protested here is not a challenge to the any Commerce determination made under the statutes referenced in 19 U.S.C. § 1514(b). For purposes of this action, we assume that Commerce's ADD and CVD calculations were made in accordance with the ADD and CVD laws, as written by Congress (particularly the provisions allowing Commerce to disregard commercial reality when setting AFA rates).

---

1984). But a plaintiff's decision to exhaust the administrative protest remedy does not unsuit it.

This suit does not contest the legality of those determinations, but addresses *the effect* of those determinations, specifically whether Customs' assessment of charges as high as 688% *ad valorem* of the value of the merchandise Rimco imported worked a constitutional injury on Rimco, through the imposition by the United States of an "excessive fine" in violation of the Eighth Amendment.

## CONCLUSION

For the reasons set herein, the decision of the Trade Court dismissing this action for lack of subject matter decision should be vacated, and this case remanded, with directions for the lower court to entertain it under its 28 U.S.C. § 1581(a) protest jurisdiction.

Respectfully submitted,

/s/ John M. Peterson
John M. Peterson
*Counsel of Record*
Richard F. O'Neill
Patrick B. Klein
NEVILLE PETERSON LLP
Counsel for Plaintiff-Appellant Rimco Inc.
One Exchange Plaza at 55 Broadway
New York, New York 10006
(212) 635-2730
(212) 635-0113 (Fax)
jpeterson@npwny.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

I hereby certify that the foregoing Principal Brief of Plaintiff-Appellant, Rimco Inc., complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules. It was prepared using a proportionally-spaced typeface and includes 7,535 words.

/s/ Patrick B. Klein
Patrick B. Klein

November 23, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of November 2022, I electronically filed the foregoing Principal Brief of Rimco Inc., with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Patrick B. Klein
Patrick B. Klein

November 23, 2022

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| RIMCO, INC.,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant, | Before: Mark A. Barnett, Chief Judge<br>Court No. 21-00537 |

## JUDGMENT

This case having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is hereby

**ORDERED** that Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1), ECF No. 32, is **GRANTED**; and it is further

**ORDERED** that this action be dismissed with prejudice.

/s/ Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: July 8, 2022
New York, New York

Slip Op. 22-79

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| RIMCO, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Before: Mark A. Barnett, Chief Judge<br>Court No. 21-00537 |

**OPINION AND ORDER**

[Dismissing Rimco, Inc.'s challenge to U.S. Customs and Border Protection's assessment of countervailing and antidumping duties on entries of certain imported steel wheels from the People's Republic of China for lack of subject-matter jurisdiction.]

Dated: July 8, 2022

John M. Peterson, Neville Peterson LLP, of New York, NY, argued for Plaintiff Rimco, Inc. With him on the brief were Richard F. O'Neill and Patrick B. Klein.

Beverly A. Farrell, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney-In-Charge, International Trade Field Office, Claudia Burke, Assistant Director, and Ashley Akers, Trial Attorney. Of counsel on the brief were Ian McInerney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, and Yelena Slepak and Fariha Kabir, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Nicholas J. Birch and Roger B. Schagrin, Schagrin Associates, of Washington, DC, for Proposed Defendant-Intervenor, Accuride Corporation.

Barnett, Chief Judge: In this matter, Plaintiff Rimco, Inc. ("Plaintiff" or "Rimco") seeks to challenge the constitutionality of United States Customs and Border Protection's ("CBP") assessment of countervailing and antidumping duties on entries of

certain steel wheels from the People's Republic of China ("China"). *See* Compl., ECF No. 2. Relevant here, Defendant United States ("Defendant" or "the Government") moves to dismiss Rimco's complaint for lack of subject-matter jurisdiction pursuant to United States Court of International Trade ("USCIT") Rule 12(b)(1). Def.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted ("Mot. to Dismiss"), ECF No. 32; Def.'s Reply Mem. of Law in Supp. of its [Mot. to Dismiss], ECF No. 43. [1] Rimco opposes the motion. Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp."), ECF No. 38.

Also before the court are (1) a motion to intervene filed by proposed Defendant-Intervenor Accuride Corporation ("Accuride"), Mot. to Intervene, ECF No. 14; (2) Accuride's amended motion to amend its motion to intervene, Am. Mot. to Amend Mot. to Intervene, ECF No. 25; (3) Accuride's proposed response in support of Defendant's motion to dismiss, Proposed Resp. to Def.'s Mot. to Dismiss, ECF No. 37; and (4) Plaintiff's motion to strike the proposed response from the docket, Pl.'s Mot. for an Order Directing the Clerk to Remove ECF 37 from the Docket, ECF No. 39.

As discussed below, the court grants Defendant's motion to dismiss. Accordingly, the court denies, as moot, Accuride's motion to intervene and amended motion to amend the motion to intervene and declines to consider Accuride's proposed

[1] Defendant also argues that Rimco has failed to state a claim upon which relief can be granted pursuant to USCIT Rule 12(b)(6). Because the court dismisses the case for lack of subject-matter jurisdiction, it need not address the parties' arguments regarding the alleged failure to state a claim.

response in support of the motion to dismiss. The court further denies, as moot, Rimco's motion to strike Accuride's proposed response.

**BACKGROUND**

On March 28, 2019, the U.S. Department of Commerce ("Commerce") published the final countervailing and antidumping duty determinations on certain steel wheels from China. *See generally Certain Steel Wheels From the People's Republic of China*, 84 Fed. Reg. 11,744 (Dep't Commerce Mar. 28, 2019) (final aff. countervailing duty determination) ("*Final CVD Determination*"); *Certain Steel Wheels From the People's Republic of China*, 84 Fed. Reg. 11,746 (Dep't Commerce Mar. 28, 2019) (final determination of sales at less-than-fair-value) ("*Final AD Determination*"). No respondents participated in the antidumping duty investigation; consequently, Commerce determined only a China-wide entity rate of 231.70 percent. *See Final AD Determination*, 84 Fed. Reg. at 11,747. In the countervailing duty investigation, Commerce established individual rates for two companies based on total adverse facts available and an all-others rate of 457.10 percent. *See Final CVD Determination*, 84 Fed. Reg. at 11,745; *see generally* 19 U.S.C. § 1677e(b) (governing use of adverse inferences). Commerce published both the antidumping duty order ("AD Order") and countervailing duty order ("CVD Order") on May 24, 2019. *Certain Steel Wheels From the People's Republic of China*, 84 Fed. Reg. 24,098 (Dep't Commerce May 24, 2019) (antidumping and countervailing duty orders).

On May 1, 2020, Commerce published a notice of opportunity to request an administrative review of the countervailing and antidumping duty orders for the periods

August 31, 2018, through December 31, 2019, and October 30, 2018, through April 30, 2020, respectively. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Admin. Review*, 85 Fed. Reg. 25,394, 25,396 (Dep't Commerce May 1, 2020) ("*Opportunity Notice*"). The *Opportunity Notice* explained that interested parties (which includes importers), had the opportunity to participate in administrative reviews to ensure that entries were liquidated at the proper rate. *See id*. at 25,397; *see also Non-Market Economy Antidumping Proceedings: Assessment of Antidumping Duties*, 76 Fed. Reg. 65,694, 65,695 (Dep't Commerce Oct. 24, 2011).

Neither Rimco nor any other interested party requested an administrative review of the transactions covered by the respective periods of review. Compl. ¶¶ 17, 28. Having received no review requests, Commerce issued liquidation instructions directing CBP to liquidate entries of steel wheels subject to the CVD Order and AD Order. *Id.* ¶¶ 18, 29. Consistent with the *Final CVD Determination* and *Final AD Determination*, the instructions directed CBP to liquidate entries subject to the CVD Order at 457.10 percent and entries subject to the AD Order at 231.70 percent. *See* Compl. 18–29. CBP liquidated seven entries of Rimco's imported merchandise at the rates provided for in Commerce's liquidation instructions. *See id*.

On March 16, 2021, Rimco filed a protest challenging CBP's assessment of antidumping and countervailing duties on these entries. *See* Protests and Entries at 1, 4–22. CBP denied the protest on March 30, 2021, explaining that "19 U.S.C. [§] 1514

does not authorize protests or petitions filed against Commerce calculations or findings" and that "[p]rotest must be filed with Commerce." Protests and Entries at 2.

Rimco then commenced this action, alleging that CBP's assessment of countervailing and antidumping duties at rates of 457.10 percent and 231.70 percent, respectively, constituted "excessive fines" in violation of the Eighth Amendment to the U.S. Constitution. Compl. ¶¶ 1, 46–48.

## STANDARD OF REVIEW

To adjudicate a case, a court must have subject-matter jurisdiction over the claims presented. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Plaintiff bears the burden of establishing subject-matter jurisdiction. *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).

Here, Rimco alleges jurisdiction pursuant to 28 U.S.C. § 1581(a) or, alternatively, 28 U.S.C. § 1581(i). Compl. ¶¶ 2–3. Section 1581(a) grants the court jurisdiction to review denied protests by CBP. When a plaintiff asserts section 1581(i) jurisdiction, it "bears the burden of showing that another subsection is either unavailable or manifestly inadequate." *Erwin Hymer Group N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019) (citation omitted). Additionally, because the pending motion to dismiss rests on the absence of jurisdiction pursuant to section 1581(a) and the availability of jurisdiction pursuant to section 1581(c), thereby challenging the existence of section 1581(i) jurisdiction, "the factual allegations in the complaint are not controlling and only

uncontroverted factual allegations are accepted as true." *Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).

## DISCUSSION

### I. Subject-Matter Jurisdiction

The USCIT, like all federal courts, is a "court[] of limited jurisdiction marked out by Congress." *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 358 (Fed. Cir. 1992) (quoting *Aldinger v. Howard*, 427 U.S. 1, 15 (1976)). The court's jurisdiction is governed by 28 U.S.C. § 1581, *et seq*. *See id.*

Relevant here, section 1581(a) grants the court jurisdiction to review a protest denied pursuant to 19 U.S.C. § 1515. 28 U.S.C. § 1581(a). Section 1581(c) grants the court jurisdiction to review Commerce determinations in countervailing and antidumping duty proceedings commenced in accordance with 19 U.S.C. § 1516a. 28 U.S.C. § 1581(c). Section 1581(i) grants the court jurisdiction to entertain "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for-- . . . (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," and "(D) administration and enforcement with respect to the matters referred to in paragraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section." 28 U.S.C. § 1581(i)(1)(B), (D). Section 1581(i) also expressly excludes jurisdiction over antidumping and countervailing duty determinations reviewable by the court pursuant to 19 U.S.C. § 1516a(a). *Id.* § 1581(i)(2)(A).

"Section 1581(i) embodies a 'residual' grant of jurisdiction[] and may not be invoked when jurisdiction under another subsection of [section] 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (citation omitted). The scope of the court's jurisdiction pursuant to 28 U.S.C. § 1581(i) is "strictly limited." *Erwin Hymer*, 930 F.3d at 1374 (citation omitted). Otherwise, the court's jurisdiction under subsection (i) would "threaten to swallow the specific grants of jurisdiction contained within the other subsections." *Id*. (citation omitted). "An importer may not simply 'elect to proceed under section 1581(i) without having first availed [itself] of the remedy provided by section 1581(c).'" *Wanxiang America Corp. v. United States*, 12 F.4th, 1374 (Fed. Cir. 2021) (citing *Sunpreme*, 892 F.3d at 1193); *see also* 28 U.S.C. 1581(i) (expressly excluding antidumping and countervailing duty determinations that are reviewable by the court under 19 U.S.C. § 1516a(a) from section 1581(i) jurisdiction).

**A. The Availability of Jurisdiction Pursuant to Section 1581(a)**

The Government contends that the court lacks jurisdiction pursuant to section 1581(a) to hear Rimco's claim "because CBP did not make a protestable decision with respect to either the countervailing or antidumping rate applied to the imported merchandise." Mot. to Dismiss at 8. The liquidation is not a protestable decision, the Government contends, because "CBP does not possess any discretion" when liquidating "entries pursuant to Commerce's liquidation instructions." *Id*. at 9.

Rimco responds that the court has subject-matter jurisdiction pursuant to section 1581(a) because "CBP made a protestable decision" by liquidating Rimco's entries. Pl.'s Resp. at 7; *see also id*. at 5, 7–10. Rimco also contends that its Eighth Amendment claim "could not have been raised before Commerce or in an action brought" pursuant to section 1581(c) because, "in the absence of liquidation," it had "suffered no injury" and its claim would not have been ripe. *Id*. at 7; *see also id.* at 10–12.

Pursuant to section 1581(a), this court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]." 28 U.S.C. § 1581(a). Section 1515 governs CBP's review of protests filed under 19 U.S.C. § 1514. 19 U.S.C. § 1515(a). Section 1514(a), in turn, sets forth the exclusive list of CBP decisions that are subject to protest. 19 U.S.C. § 1514(a)(1)–(7). The introduction to section 1514(a) begins, however, by excepting certain determinations from its purview, most notably, antidumping and countervailing duty determinations reviewable pursuant to 19 U.S.C. § 1516a as referenced in subsection 1514(b).

This distinction between protestable determinations by CBP and antidumping and countervailing duty determinations by Commerce has long been recognized in both the statute and judicial precedent. *See* 19 U.S.C. § 1514(a)–(b); *see also Mitsubishi Elec. Am., Inc. v. United States*, 44 F.3d 973, 976 (Fed Cir. 1994); *American Nat'l Fire Ins. Co. v. United States*, 30 CIT 931, 939–940, 441 F. Supp. 2d 1275, 1285 (2006). "[I]f [CBP's] underlying decision does not relate to any of the[] seven categories"

enumerated in section 1514(a), "the court may not exercise [section] 1581(a) jurisdiction over an action contesting [CBP's] denial of a protest filed against that decision." *American Nat'l Fire Ins.*, 30 CIT at 940, 441 F. Supp 2d at 1285. Moreover, "[s]ection 1514(a) does not embrace decisions by other agencies." *Mitsubishi*, 44 F.3d at 976. Thus, section 1514(a) and (b), read together, "exclude antidumping [and countervailing] determinations from the list of matters that parties may protest to [CBP]." *Id*.

In this action, Rimco challenges CBP's denial of its protest of the agency's liquidation of certain entries of Rimco's imported merchandise. *See* Compl. ¶¶ 18, 29. Rimco contends that 19 U.S.C. § 1500 "mandates that CBP make a 'decision'" with respect to every entry.[2] Pl.'s Resp. at 7. This contention is without merit.

It is well settled that in liquidating entries subject to countervailing and antidumping duties, CBP simply "follows Commerce's instructions"—its role is "merely ministerial." *Mitsubishi*, 44 F.3d at 977. In other words, because CBP lacks discretion when it liquidates entries pursuant to Commerce's liquidation instructions, it "does not make any section 1514 . . . 'decisions.'" *See id*; *cf. U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed. Cir. 1997), *aff'd*, *United States v. United States Shoe Corp.*, 523 U.S. 360 (1998) ("Typically, 'decisions' of [CBP] are substantive determinations

[2] While Rimco does not specifically address the provision in section 1500 under which CBP made a protestable decision, it appears that it is referring to section 1500(b), whereby CBP is to "fix the final classification and rate of duty applicable to such merchandise." 19 U.S.C. § 1500(b); *see also* Pl.'s Resp. at 18 ("[Pursuant to] 19 U.S.C. § 1500, CBP is required to determine the rate and amount of duty applicable to an entry of imported merchandise, and render a decision regarding same.").

involving the application of pertinent law and precedent to a set of facts, such as tariff classification and applicable rate of duty.").

Despite this issue being well-settled law, Rimco contends that "[i]t is of no moment that . . . CBP acted in a ministerial capacity by following [Commerce's] directions." Pl.'s Resp. at 6. Rimco cites *Wirtgen Am. v. United States*, 44 CIT __, 437 F. Supp. 3d 1302 (2020), for the proposition that CBP can make protestable decisions even when acting pursuant to directions from another agency, in that case, the U.S. International Trade Commission ("ITC"). *See id.* *Wirtgen,* however, is inapposite. *Wirtgen* involved a challenge to CBP's decision to exclude merchandise from entry pursuant to an exclusion order issued by the ITC. *Wirtgen*, 437 F. Supp. 3d at 1304–05. The defendant in *Wirtgen* argued that CBP was acting ministerially because it simply implemented the ITC exclusion order. *Id*. at 1306. The court, however, found that the plaintiff had pleaded sufficient facts according to which CBP had interpreted the ITC's exclusion order to find that the plaintiff's merchandise was subject to that order. *Id*. at 1307. Here, no comparable interpretation was made by CBP. Instead, as described by the *Mitsubishi* court, CBP's role was merely ministerial in assessing the antidumping and countervailing duties based on the instructions received from Commerce. *See* Compl. ¶¶ 18, 29.

Rimco also relies on *Swisher International Inc. v. United States*, 205 F.3d 1358, (Fed. Cir. 2000), for the proposition that a constitutional challenge to fees levied by CBP may be brought under the court's section 1581(a) jurisdiction following a protest. *See* Pl.'s Resp. at 9, 15. In *Swisher,* however, the court found that the denial of a refund of

the Harbor Maintenance Tax constituted a "decision as to a charge or exaction" within the meaning of 19 U.S.C. § 1514(a)(3). 205 F.3d at 1366. By contrast, in this case, Rimco disregards the fact that the statute expressly excludes antidumping and countervailing duty determinations from the list of protestable decisions.

In sum, because CBP's liquidation of the entries at issue was not a protestable decision, the court does not possess jurisdiction to hear this claim pursuant to section 1581(a).

**B. The Availability of Jurisdiction Pursuant to Section 1581(i)**

The Government argues that jurisdiction pursuant to section 1581(i) is unavailable in this case because jurisdiction pursuant to section 1581(c) would have been available had Rimco requested an administrative review of Rimco's imports by Commerce. *See* Mot. to Dismiss at 10. The Government argues that because Rimco was an "interested party" as defined by 19 U.S.C. § 1677(9), Rimco could have requested an administrative review to address the level and constitutionality of the countervailing and antidumping duty rates assessed against its imports. *See id.* at 11. Thus, according to the Government, section 1581(c) serves as "the only valid basis for jurisdiction." *Id.* at 13. The Government also argues that "Rimco has not established or even alleged . . . that the potential remedy provided under section 1581(c) is manifestly inadequate." *Id.* at 11.

Rimco argues that, should the court not find jurisdiction pursuant to 28 U.S.C. § 1581(a), the court possesses residual jurisdiction under section 1581(i) because the "action relates to the administration and enforcement of matters covered by [the court's

other bases for jurisdiction].” Pl.’s Resp. at 19–20. Rimco argues that section 1581(c) jurisdiction was not available because “[n]o unconstitutional injury . . . existed until CBP exacted monies from Rimco” and “Commerce [was] not competent to judge the constitutionality of its actions.” *Id*. at 20.

It is well settled that “[a] party may not expand a court’s jurisdiction by creative pleading.” *Sunpreme*, 892 F.3d at 1193 (quoting *Norsk Hydro*, 472 F.3d at 1355). Instead, the court must “look to the true nature of the action . . . in determining jurisdiction of the appeal.” *Id*. (quoting same). The “true nature” of Rimco’s action is a challenge to the assessment of countervailing and antidumping duties in accordance with the rates established by Commerce and communicated to CBP in the liquidation instructions. *See* Compl. ¶¶ 1, 48. Thus, the court lacks jurisdiction pursuant to section 1581(i) because jurisdiction pursuant to section 1581(c) was available and would not have been manifestly inadequate.

Rimco, as an importer of subject merchandise, was an interested party that could have requested administrative reviews of the countervailing and antidumping duty rates on its imports. *See* 19 U.S.C. § 1677(9); 19 C.F.R. § 351.213(b); *Opportunity Notice*, 85 Fed. Reg. at 25,396–97. In such administrative reviews, Rimco could have challenged the constitutionality of the rates selected by Commerce. Had Commerce disagreed with Rimco’s assertions that the antidumping and countervailing duties were unconstitutional under the Eighth Amendment, Rimco could have brought an action in this court pursuant to section 1581(c) challenging one or both administrative reviews. *See* 19 U.S.C. § 1516a; 28 U.S.C. § 1581(c). Rimco, however, declined to request an

administrative review and, pursuant to 19 C.F.R. § 351.212(c)(1), Commerce issued instructions to CBP to liquidate the entries at the antidumping and countervailing duty rates in effect at the time of entry. Compl. ¶¶ 18, 29.

For Rimco to invoke the court's section 1581(i) jurisdiction, it must show that any remedy available under the court's section 1581(c) jurisdiction would have been manifestly inadequate. *See Sunpreme*, 892 F.3d at 1191. For a remedy to be manifestly inadequate, it must be an "exercise in futility, or 'incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'" *Id*.

Rimco contends that the constitutionality of the rates could not have been addressed by Commerce or the court pursuant to its section 1581(c) jurisdiction. *See* Pl.'s Resp. at 10–12. Rimco argues that Commerce does not have the capacity to address such claims and that Rimco would lack standing to bring an Eighth Amendment claim prior to liquidation. Pl.'s Resp. at 11–12. Both arguments fail.

First, Rimco's undeveloped assertion that Commerce lacks the capacity to consider its Eighth Amendment argument is unfounded. It has long been recognized that Commerce is the "master" of the countervailing and antidumping duty laws and was entrusted by Congress with determining the appropriate countervailing and antidumping duties. S*ee Consumer Prods. Div., SCM Corp. v. Silver Reed Am., Inc.*, 753 F.2d 1033, 1039 (Fed. Cir. 1985). Assuming that Rimco's foreign producer(s) or exporter(s) would decline to participate in such an administrative review, had Rimco requested one, Commerce has a great deal of discretion in selecting the appropriate rate to use when

making an adverse inference pursuant to 19 U.S.C. § 1677e. In particular, subsection (b)(2) lists four broad categories of information upon which Commerce may draw in making an adverse inference:

> An adverse inference under paragraph (1)(A) may include reliance on information derived from--
> (A) the petition,
> (B) a final determination in the investigation under this subtitle,
> (C) any previous review under section 1675 of this title or determination under section 1675b of this title, or
> (D) any other information placed on the record.

19 U.S.C. § 1677e(b)(2). Nothing in this provision, or any other provision regarding Commerce's selection of an adverse facts available rate, suggests that Commerce would not be able to account for any objections reasonably founded in the Eighth Amendment when making any adverse inference. This is particularly true in this case when Rimco expressly directs its challenge to the rates selected by Commerce and not the constitutionality of the statute.

Rimco suggests that the language of 19 U.S.C. § 1677e(d)(3) is relevant to its Eighth Amendment claim. *See* Pl.'s Resp. at 2–3, 11, 19. That subsection clarifies that in using an adverse inference in selecting from facts otherwise available Commerce is not required:

> (A) to estimate what the countervailable subsidy rate or dumping margin would have been if the interested party found to have failed to cooperate under subsection (b)(1) had cooperated; or
> (B) to demonstrate that the countervailable subsidy rate or dumping margin used by the administering authority reflects an alleged commercial reality of the interested party.

19 U.S.C. § 1677e(d)(3)(A)–(B). Without deciding the merits of Rimco's position, nothing about this language suggests that Commerce would be incapable of considering the merits of an Eighth Amendment argument in determining how to exercise its discretion in selecting information for purposes of making an adverse inference. To the contrary, the provision simply clarifies the absence of certain requirements.

Rimco acknowledges that "whe[n] the constitutional challenge is to an administrative . . . action," it is "appropriate to encourage 'further factual development within the agency.'" Pl.'s Resp. at 17 (citing *Nufarm Am.'s Inc. v. United States*, 29 CIT 1317, 1327, 398 F. Supp. 2d 1338, 1348 (2005)). While Rimco makes this argument to suggest that its protest to CBP constituted the appropriate avenue to judicial review, this argument more appropriately supports requiring Rimco to raise this issue before Commerce, the agency that determined the allegedly unconstitutional assessment rates. Consideration by Commerce would have provided the court with a record basis for reviewing the rates and a context in which to evaluate whether they were, in fact, "excessive." As Plaintiff recognized in its complaint, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality[,]" *United States v. Bajakajian*, 524 U.S. 321, 334 (1997), and that "[i]f the amount of the forfeiture is grossly disproportional to the gravity of the . . . offense, it is unconstitutional," *id.* at 337. Antidumping and countervailing duties are designed to offset sales at less than fair value and the effects of unfair subsidization, respectively.

Without a record developed by Commerce, it would be impossible for the court to evaluate whether the duties were unconstitutionally disproportionate.

Here, Rimco has not demonstrated that pursuing its claims through an administrative review would have been an exercise in futility, useless, or incapable of producing the result it seeks. If Rimco established that Commerce's selected rates violated the Eighth Amendment, Commerce could have exercised its ample discretion to modify the information upon which it relied in making its adverse inference. *See* 19 U.S.C. § 1677e(b); *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1338–39 (Fed. Cir. 2002) ("In the case of uncooperative respondents, the discretion granted by [19 U.S.C. § 1677e(b)] appears to be particularly great, allowing Commerce to select among an enumeration of secondary sources as a basis for its adverse factual inferences.*"); see also Smith-Corona Group v. United States*, 713 F.2d 1568, 1571 (Fed. Cir. 1983) ("The Secretary has broad discretion in executing the [antidumping and countervailing duty] law.").

Rimco's argument that it would lack standing to challenge such a determination pursuant to 1581(c) is equally unavailing. In order to have standing, a plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992); *see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1364 (Fed. Cir. 2019). Rimco offers no persuasive reason to treat this case differently from other cases

arising under section 1581(c) based on the constitutional nature of its claim. Standing does not require past injury. *See Shenyang Yuanda*, 918 F.3d at 1364 ("For such standing to exist, a plaintiff must have already suffered *or be imminently threatened with* a concrete, particularized injury . . . .") (emphasis added); *cf. Barber v. Charter Township of Springfield*, 31 F.4th 382, 389–393 (6th Cir. 2022) (holding that plaintiff had standing to bring a Fifth Amendment takings claim despite plaintiff's property having not yet been taken). As is true in any case arising under section 1581(c), liquidation would not have occurred at the time Commerce makes its determination, but is sufficiently imminent for standing purposes and, once Commerce issues liquidation instructions, CBP will have no discretion to alter or disregard those instructions.[3] *See Mitsubishi*, 44

---

[3] The court's jurisprudence with respect to the determination and assessment of antidumping and countervailing duties demonstrates that parties are entitled to adjudicate their claims concerning the determination of those duties prior to liquidation—and indeed must or else they risk losing their claims to mootness. *See Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983) (holding that the USCIT erred in refusing to grant plaintiff a preliminary injunction because "the statutory scheme has no provision permitting reliquidation" even when a plaintiff is successful on the merits); *SKF USA Inc. v. United States*, 28 CIT 170, 186, 316 F. Supp. 2d 1322, 1337 (2004) ("Once liquidation occurs, judicial review is ineffective and thus, '[a]llowing the liquidation to proceed would be tantamount to denial of the opportunity to challenge administrative determinations.'") (quoting *PPG Indus., Inc. v. United States*, 11 CIT 5, 7 (1987)). If Rimco's argument were to prevail, the carefully crafted statutory scheme would be turned on its head. Congress has provided interested parties with an avenue for challenging countervailing and antidumping duty rates at the administrative level by participation in administrative reviews and in the courts through section 1581(c) jurisdiction. Endorsing Rimco's approach of protesting the assessment of antidumping and countervailing duties could convert *every* challenge to a Commerce determination to an action under section 1581(a), rendering the court's section 1581(c) jurisdiction superfluous, contrary to congressional intent. *See* Customs Courts Act of 1980, H.R. Rep. No. 96-1235, at 1 (1980) ("It is the intent of the committee that importers . . . not utilize proposed section 1581(a) to circumvent the exclusive method of judicial review of

F.3d at 977. Furthermore, the injury would be fairly traceable to Commerce as the agency which determined the allegedly unconstitutional rates. Finally, the court could grant relief to redress or prevent a plaintiff's injury by remanding the issue to Commerce to redetermine any rates found to be unconstitutional.[4]

Because the "true nature" of this dispute is a challenge to the countervailing and antidumping duty rates set by Commerce in the respective orders—rates which directly informed the liquidation instructions—Rimco could have raised its constitutional claims by requesting an administrative review and in any subsequent challenge to the final results of such administrative review. Rimco failed to pursue the administrative avenue available to it and thereby missed its opportunity to challenge the rates set by Commerce. It cannot avoid the consequences of that failure through the exercise of the court's section 1581(i) jurisdiction.

## II. Moot Issues

Also before the court are (1) Accuride's motion to intervene; (2) Accuride's amended motion to amend its motion to intervene; and (3) Plaintiff's motion to strike the proposed response. Because the court grants the Government's motion to dismiss,

---

an antidumping and countervailing duty determination listed in section 516A of the Tariff Act of 1930 . . . .").

[4] In *KYD, Inc. v. United States*, 36 CIT 676, 836 F. Supp. 2d 1410 (2012), the plaintiff sought to raise an Eighth Amendment claim challenging an antidumping duty rate based on adverse facts available in a case brought pursuant to the court's section 1581(c) jurisdiction. In that case, however, the court ruled that because plaintiff had not raised its Eighth Amendment claim in its post-remand brief, its claim had been waived. 36 CIT at 678–79, 836 F. Supp. 2d at 1413–14. While this case is not binding on the court, it supports the proposition that parties may raise Eighth Amendment challenges to Commerce determinations pursuant to section 1581(c).

these motions are denied as moot. *See TR Int'l Trading Co. v. United States*, 44 CIT __, __, 433 F. Supp. 3d 1329, 1346 (granting defendant's motion to dismiss for lack of subject-matter jurisdiction and denying proposed defendant-intervenor's motion to intervene as moot). Because the court denies Accuride's motion to intervene, the court does not consider its proposed response.

## CONCLUSION AND ORDER

For the foregoing reasons, the court **GRANTS** Defendant's motion to dismiss for lack of jurisdiction. Because the court lacks jurisdiction, proposed Defendant-Intervenor's motion to intervene and amended motion to amend the motion to intervene, and Plaintiff's motion to strike the proposed response are **DENIED AS MOOT**.

Judgment will enter accordingly.

/s/ Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: July 8, 2022
New York, New York