**Appeal No. 2022-2079**

# United States Court of Appeals
# For The Federal Circuit

RIMCO INC.,

*Plaintiff-Appellant*,

—v.—

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade
in Case No. 21-cv-00537, Chief Judge Mark A. Barnett

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant
   Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

CLAUDIA BURKE
Assistant Director

*Of Counsel*
IAN A. McINERNEY
Office of the Chief Counsel for
   Trade Enforcement and Compliance
U.S. Department of Commerce

YELENA SLEPAK
FARIHA KABIR
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: February 15, 2023

BEVERLY A. FARRELL
Senior Trial Attorney
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264-9230 or 0483
*Attorneys for Defendant-Appellee*

## <u>STATEMENT OF RELATED CASES</u>

No other appeal in or from the present civil action has previously been before this or any other appellate court.  The government is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

# TABLE OF CONTENTS

STATEMENT OF ISSUES ........................................................... 1

STATEMENT OF THE CASE........................................................ 1

   A. Statutory Background ................................................... 1

   B. The Determinations Here.............................................. 4

   C. Rimco Does Not Request An Administrative Review ................................. 5

   D. CBP Carries Out Commerce's Instructions.................................... 7

   E. Rimco Protests CBP's Assessment ............................................ 6

   F. Proceedings Below ...................................................... 7

SUMMARY OF THE ARGUMENT ...................................................... 9

ARGUMENT ......................................................................... 11

 I.   STANDARD OF REVIEW........................................................ 11

II.   THE TRIAL COURT CORRECTLY HELD THAT IT LACKED SUBJECT
    MATTER JURISDICTION OVER RIMCO'S COMPLAINT .................. 12

   A. CBP's Ministerial Act Of Collecting Antidumping And
      Countervailing Duties Is Not A Protestable Decision, Therefore
      Jurisdiction Under Section 1581(a) Does Not Exist  ................................. 12

   B. Because Rimco's Remedy Under 28 U.S.C. § 1581(c) Is Not
      Manifestly Inadequate, Section 1581(i) Is Unavailable  ........................... 15

i

1. Rimco Could Have Requested An Administrative Review By Commerce To Address The Level And Constitutionality Of The Countervailing And Antidumping Duty Rates Assessed Against Its Imports ............................................................ 16

2. Rimco Possessed Standing To Seek An Administrative Review By Commerce ................................................................ 17

3. Commerce Is The Proper Entity To Consider Rimco's Claims In The First Instance ............................................................ 18

4. Jurisdiction Under Section 1581(i) Is Unavailable ............................... 22

CONCLUSION ................................................................................. 24

## TABLE OF AUTHORITIES

### Cases

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006)...................................................................... 8

*Bristol Metals L.P. v. United States*,
703 F. Supp. 2d 1370 (Ct. Int'l Trade 2010) ...................................... 2-3

*China Manufacturers Alliance, LLC v. United States*,
1 F.4th 1028 (Fed. Cir. 2021) ........................................................ 4

*Erwin Hymer Group N. Am., Inc. v. United States*,
930 F.3d 1370 (Fed. Cir. 2019)...................................................... 22-23

*Goldman v. United States*,
28 C.C.P.A. 162 (1940) ................................................................ 14

*Guangdong Wireking Housewares & Hardware Co., Ltd. v. United States*,
745 F.3d 1194 (Fed. Cir. 2014)...................................................... 1-2

*Hutchinson Quality Furniture, Inc. v. United States*,
827 F.3d 1355 (Fed. Cir. 2016)...................................................... 11

*Meridian Prods., LLC v. United States,*
851 F.3d 1375 (Fed. Cir. 2017) ............................................................ 2, 4

*Mitsubishi Elec. Am., Inc. v. United States,*
44 F.3d 973 (Fed. Cir. 1994) ............................................................ 12, 13

*Norman G. Jensen, Inc. v. United States,*
687 F.3d 1325 (Fed. Cir. 2012) .............................................................. 22

*Norsk Hydro Can., Inc. v. United States,*
472 F.3d 1347 (Fed. Cir. 2006) .............................................................. 11

*Public Utilities Commission of State of California v. United States,*
355 U.S. 534 (1958) ............................................................................... 20

*Sandvik Steel Co. v. United States,*
164 F.3d 596 (Fed. Cir. 1998) ............................................................... 18

*Sigm Corp. v. United States,*
117 F.3d 1401 (Fed. Cir. 1997) ............................................................... 2

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.,*
672 F.3d 1041 (Fed. Cir. 2012) ............................................................... 1

*Sunpreme Inc. v. United States,*
892 F.3d 1186 (Fed. Cir. 2018) ....................................................... 15, 23

*Swisher International Inc. v. United States,*
205 F.3d 1358 (Fed. Cir. 2000) .............................................................. 14

*Ta Chen Stainless Steel Pipe, Inc. v. United States,*
298 F.3d 1330 (Fed. Cir. 2002) .......................................................... 21-22

*Thomson Consumer Elecs. v. United States,*
247 F.3d 1210 (Fed. Cir. 2001) .............................................................. 20

*Thyssenkrupp Steel N. Am., Inc. v. United States,*
886 F.3d 1215 (Fed. Cir. 2018) ................................................. 11, 13, 15

*United States v. Bajakajian,*
524 U.S. 321 (1998) ............................................................................... 21

*United States v. Fox River Butter Co.,*
20 C.C.P.A. 38 (1932) ........................................................................... 14

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,*
716 F.3d 1370 (Fed. Cir. 2013) ............................................................... 3

**Statutes**

19 U.S.C. § 1514 ................................................................. 8, 12

19 U.S.C. § 1514(a) ........................................................ 12, 13, 15

19 U.S.C. § 1514(a)(2) .................................................... 11, 16

19 U.S.C. § 1514(a)(5) ........................................................ 13

19 U.S.C. § 1514(a)(3) .................................................... 13, 14

19 U.S.C. § 1514(b) ............................................................ 11

19 U.S.C. § 1515 ............................................................... 15

19 U.S.C. § 1516a .......................................................... 12, 16

19 U.S.C. § 1671(a) ............................................................. 1

19 U.S.C. § 1671d(a)-(b) ...................................................... 2

19 U.S.C. § 1671(e) ............................................................. 4

19 U.S.C. § 1673 ................................................................. 1

19 U.S.C. § 1673a-1673d ...................................................... 2

19 U.S.C. § 1673d(a)-(b) ...................................................... 2

19 U.S.C. § 1673d(c)(5)(A) ................................................. 2, 3

19 U.S.C. § 1673e ............................................................... 4

19 U.S.C. § 1677(9) ......................................................... 6, 16

19 U.S.C. § 1677e ............................................................... 3

19 U.S.C. § 1677e(b) ........................................................ 5, 21

28 U.S.C.§ 1581(a) ..................................................... 1, 8, 10, 11

28 U.S.C. § 1581(c) ...................................................... *passim*

28 U.S.C. § 1581(i) ...................................................... *passim*

**Regulations**

19 C.F.R. § 351.107(d) ......................................................................... 3

19 C.F.R. § 351.212(c) ....................................................................... 7, 17

19 C.F.R. § 351.213(b) ......................................................................... 16

**Other Authorities**

*Certain steel wheels From the People's Republic of China: Final
Affirmative Countervailing Duty Determination,*
84 Fed. Reg.11,744 (Dep't Commerce Mar. 28, 2019) ........................... 4

*Certain Steel Wheels From the People's Republic of China: Final
Determination of Sales at Less-Than-Fair-Value,*
84 Fed. Reg. 11,746 (Dep't Commerce Mar. 28, 2019 ........................... 4

*Certain Steel Wheels From the People's Republic of China: Antidumping
and Countervailing Duty Orders,*
84 Fed. Reg. 24,098 (Dep't Commerce May 24, 2019 ........................... 5

*Antidumping or Countervailing Duty Order, Finding or Suspended
Investigation: Opporunity to Request Adminstrative Review,*
85 Fed. Reg. 25,394 (Dep't Commerce May 1, 2020) ................................... *passim*

*Non-Market Economy Antidumping Proceedings: Assessment of
Antidumping Duties,*
76 Fed. Reg. 65,694 (Dept. Commerce Oct. 24, 2011) ....................... 6, 7

## STATEMENT OF THE ISSUES

I.    Whether the trial court erred in finding that it lacked subject matter jurisdiction under 28 U.S.C. § 1581(a) to adjudicate Rimco's claim when Rimco's challenge is really to the countervailing and duty rates calculated by the Department of Commerce.

II.   Whether the trial court erred in finding that it lacked subject matter jurisdiction under 28 U.S.C. § 1581(i) to adjudicate Rimco's claim when Rimco could have raised its challenges to Commerce first.

## STATEMENT OF THE CASE

### A.    Statutory Background

Antidumping and countervailing duties work to protect domestic industries from unfair pricing and subsidy practices by foreign producers and foreign governments.  *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1046-47 (Fed. Cir. 2012).

The antidumping statute, 19 U.S.C. § 1673, combats this practice by providing for the assessment of duties on such imports.  19 U.S.C. § 1673.  Countervailing duties are intended to offset foreign governments' subsidization of the production of goods imported into the United States. 19 U.S.C. § 1671(a).  However, "the primary purpose of antidumping and countervailing

duties generally is remedial, not punitive." *Guangdong Wireking Housewares & Hardware Co., Ltd. v. United States*, 745 F.3d 1194, 1206 (Fed. Cir. 2014).

When such unfair trading practices arise, Congress has charged the United States Department of Commerce (Commerce) and the United States International Trade Commission (ITC) with the authority to conduct antidumping and countervailing duty investigations.  19 U.S.C. §§ 1671a - 1671d, 1673a - 1673d. During these proceedings, Commerce is to determine whether, and to what degree, merchandise imported into the United States is being sold at prices below fair value or benefits from countervailable subsidies, and the ITC is to determine whether the merchandise materially injures a domestic industry (or threatens material injury).  19 U.S.C. §§ 1671d(a)-(b), 1673d(a)-(b) (describing the final determinations of the agencies); *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1378 (Fed. Cir. 2017).

In non-market economy investigations, Commerce presumes that respondent companies operate under foreign government control.  *Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997).  In the course of its investigations, Commerce affords respondents the opportunity to establish an absence of *de jure* and *de facto* government control and thereby secure a separate rate.  *Sigma Corp.*, 117 F.3d at 1405.  To calculate the separate rate for non-individually investigated respondents, Commerce normally relies on 19 U.S.C. § 1673d(c)(5)(A), which

2

describes the all-others rate used in market economy investigations.  *Bristol Metals L.P. v. United States*, 703 F. Supp. 2d 1370, 1378 (Ct. Int'l Trade 2010) (citation omitted).  Section 1673d(c)(5)(A) instructs Commerce to weight-average the rates calculated for the investigated parties, excluding *de minimis* or zero rates and rates based on facts available, to determine the separate rate.  If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or *de minimis* margins, or are determined entirely under 19 U.S.C. § 1677e, *i.e.*, the facts available, Commerce may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated.  *See Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013).  Any methodology used by Commerce must reasonably reflect the potential dumping margins for non-investigated exporters or producers.

This Court has recognized that Commerce has "broad authority to interpret the antidumping statute and devised procedures to carry out the statutory mandate."  *Sigma*, 117 F.3d at 1402.  Consistent with this broad authority, Commerce has developed a longstanding practice, codified in regulation, of applying a single rate to all exporters in an NME country who are unable to demonstrate independence from the government.  *See* 19 C.F.R. § 351.107(d), which provides that "[i]n an antidumping proceeding involving imports from a

3

nonmarket economy country, 'rates' may consist of a single dumping margin applicable to all exporters and producers." And this Court's precedent has "uniformly sustained Commerce's recognition of an NME-wide entity as a single exporter for purposes of assigning an antidumping rate to the individual members of the entity." *China Manufacturers Alliance, LLC v. United States*, 1 F.4th 1028, 1036 (Fed. Cir. 2021)

Thus, when the requisite factors are met, Commerce issues an antidumping or countervailing duty order. 19 U.S.C. §§ 1671e, 1673e; *Meridian Prods.*, 851 F.3d at 1378.

## B. The Determinations Here

On March 28, 2019, Commerce published the final countervailing and antidumping duty determinations on certain steel wheels from the People's Republic of China. *Certain Steel Wheels From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 84 Fed. Reg. 11,744 (Dep't Commerce Mar. 28, 2019) (*Final CVD Determination*) and *Certain Steel Wheels From the People's Republic of China: Final Determination of Sales at Less-Than-Fair-Value*, 84 Fed. Reg. 11,746 (Dep't Commerce Mar. 28, 2019) (*Final AD Determination*). Appx4. For the *Final CVD Determination*, Commerce established rates for two companies based on total adverse facts available of 457.10 percent and an all-others 457.10 percent. Appx4; *see* 84 Fed. Reg. at

4

11,745.[1]  For the *Final AD Determination*, because no companies participated, Commerce established only a China-wide entity rate of 231.08 percent for entries of subject merchandise.  Appx4; *see* 84 Fed. Reg. at 11,747.

On May 24, 2019, Commerce published the antidumping order (AD Order) and the countervailing order (CV Order).  *Certain Steel Wheels From the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24,098-24,100 (Dep't Commerce May 24, 2019).

### C.    Rimco Does Not Request An Administrative Review

On May 1, 2020, Commerce published a notice of opportunity to request an administrative review of the countervailing and antidumping duty orders for the

---

[1] *See* 19 U.S.C. § 1677e(b) concerning adverse inferences, which provides:

> **(1)** **IN GENERAL** If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering         authority or        the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle—

> **(A)** may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available; and

> **(B)** is not required to determine, or make any adjustments to, a countervailable subsidy rate or weighted average dumping margin based on any assumptions about information the interested party would have provided if the interested party had complied with the request for information.

periods August 31, 2018, through December 31, 2019, and October 30, 2018

through April 30, 2020, respectively.  Appx4-5; *See Antidumping or*

*Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to*

*Request Administrative Review*, 85 Fed. Reg. 25,394, 25,396 (Dep't of Commerce

May 1, 2020) (*Opportunity Notice*).

   In the *Opportunity Notice*, Commerce explained that interested parties, such

as importers,[2] have an opportunity to participate in administrative reviews to

ensure that entries are liquidated at the proper rate.  Appx5; *see* Fed. Reg. at

25,397; *see also Non-Market Economy Antidumping Proceedings:  Assessment of*

*Antidumping Duties*, 76 Fed. Reg. 65,694 (Dep't Commerce Oct. 24, 2011) (*NME*

*Assessment Policy*) (implementing a policy refinement regarding the rate at which

it will instruct CBP to liquidate such non-reviewed entries).[3]

---

[2] The term "interested party" is defined as "(A) a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise or a trade or business association a majority of the members of which are producers, exporters, or importers of such merchandise . . . ."  19 U.S.C. § 1677(9).

[3] In the *NME Assessment Policy*, Commerce stated the following:

   [I]mporters will sometimes declare in their entry documentation a cash deposit rate that is associated with a company which has a company-specific rate, as opposed to the NME-wide rate, but the sales underlying the particular entry are not reported to or reviewed by [Commerce] in the course of the administrative review covering the company.  As a result, there may be suspended entries to which [Commerce]'s final review results do not apply. . . [Commerce] will instruct CBP to apply the NME-wide rate to entries suspended at a

Rimco, a U.S. importer-interested party, did not request administrative reviews in response to the *Opportunity Notice*. Appx5. Consistent with 19 C.F.R. § 351.212(c), because no party requested a review of either order, Commerce issued liquidation instructions directing CBP to assess entries subject to the CVD Order at the as entered cash deposit rate of 457.10 percent and entries subject to the AD Order at the as entered cash deposit rate of 231.08 percent. Appx5.

### D.    CBP Carries Out Commerce's Instructions

CBP applied the rates provided for in Commerce's instructions to seven entries of Rimco's imported merchandise and liquidated the entries**.** Appx5. The complaint does not allege that CBP engaged in any interpretative judgments implementing Commerce's instructions. *See* Appx5.

---

reviewed exporter's rate, but which are not reported to or reviewed by [Commerce] during the administrative review process.

76 Fed. Reg. at 64,694. Commerce also explained that "any interested party can file a notice of appearance with [Commerce] to ensure that its entries are liquidated in accordance with its expectations." *Id.* at 64,695. Pursuant to the *NME Assessment Policy*, entries of steel wheels entering the United States under the case number for an individually-examined exporter would be liquidated at the NME-wide entity rate if that individually-examined exporter did not include the merchandise in its U.S. sales database submitted during the review, in accordance with Commerce's assessment policy for proceedings involving non-market economy countries. *Id.* at 65,694-95.

### E.    Rimco Protests CBP's Assessment

On March 16, 2021, Rimco protested CBP's assessment of countervailing and antidumping duties on the subject entries.  On March 30, 2021, CBP denied the protest, explaining that "'19 U.S.C. [§] 1514 does not authorize protests or petitions against Commerce calculations or findings' and that '[p]rotest must be filed with Commerce.'"  Appx6.

### F.    Proceedings Below

On September 22, 2021, Rimco commenced an action at the Court of International Trade by asserting jurisdiction under section 1581(a) or, alternatively, under section 1581(i).  Appx6.  In its complaint, Rimco alleged that CBP's assessment of countervailing and antidumping duties at the rates of 457.10 and 231.08, respectively, constitutes excessive fines prohibited by the Eighth Amendment of the U.S. Constitution.

The trial court noted that to entertain Rimco's action it must possess subject matter jurisdiction over the action.  Appx6.  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  In conducting its analysis, the trial court noted that because "the motion to dismiss rests on the absence of jurisdiction," "the factual allegation in the complaint are not controlling and only uncontroverted factual allegations are accepted as true.  Appx6-7.  Recognizing

8

that the Court of International Trade is a "court[] of limited jurisdiction marked out by Congress," the trial court carefully analyzed both bases of jurisdiction, *i.e.*, sections 1581(a) and 1581(i), to determine whether it possessed jurisdiction to hear the claim asserted by Rimco.  Appx7, 8-19.

After ascertaining the true nature of Rimco's complaint as one challenging Commerce's countervailing and antidumping duty rates applicable to Rimco's imported merchandise, the trial court concluded that it did not possess jurisdiction under either basis.  Instead, because section 1581(c) was available to Rimco and would not have been manifestly inadequate, the trial court dismissed the action for lack of subject matter jurisdiction.  Appx19.

The trial court dismissed the complaint for lack of subject matter jurisdiction and dismissed the action with prejudice.  Appx1.[4]

## SUMMARY OF THE ARGUMENT

The trial court correctly held that it lacked jurisdiction to entertain Rimco's action under 28 U.S.C. § 1581(a) because CBP's ministerial role in assessing the

---

[4] Accuride Corporation moved to intervene and filed a proposed response in support of the Government's motion to dismiss.  Rimco opposed Accuride's intervention in the case.  Appx3-4.  The trial court denied Accuride's motion to intervene as moot and declined to consider Accuride's proposed response.  *Id.*  The court also denied, as moot, Rimco's motion to strike Accuride's proposed response.  Appx4.

antidumping and countervailing duties at liquidation of Rimco's entries does not constitute a protestable decision by CBP.

Instead, as revealed by the allegations of its complaint, the true nature of Rimco's case is a challenge to the final antidumping and countervailing duty rates determined by Commerce to be applicable to the imported merchandise covered by Rimco's seven entries. As such, the correct method to challenge such determinations is to participate in the investigations and then challenge the final investigation determinations or to request administrative reviews by Commerce of Rimco's imports. As an importer of the subject merchandise, Rimco was an interested party entitled to request administrative reviews of the countervailing and antidumping duty rates on its imports. Indeed, Commerce issued an *Opportunity Notice* to inform interested parties of the availability of review. Rimco failed to avail itself of this opportunity.

The decision of what rate to apply is Commerce's alone and, for that reason, the claims should have been brought as 28 U.S.C. § 1581(c) challenges. Had Rimco exhausted that approach, Commerce, the agency delegated the authority by Congress to assess antidumping and countervailing duty rates, could have considered Rimco's arguments that the rates were excessive, and it could have potentially altered its decision.

Because the decision of how much antidumping and countervailing duties to assess is solely Commerce's, CBP cannot possibly determine whether the duties assessed were excessive or punitive in any way.  And because Rimco could have, but chose not to request administrative reviews of the antidumping or countervailing duty Orders, the trial court lacks jurisdiction under 28 U.S.C. § 1581(i).

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews a dismissal granted for lack of subject matter jurisdiction *de novo* as a question of law.  *Hutchinson Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1359 (Fed. Cir. 2016); *see also Thyssenkrupp Steel N. Am., Inc. v. United States*, 886 F.3d 1215, 1221 (Fed. Cir. 2018).

The burden of establishing jurisdiction is on the party invoking it.  *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  The well-pleaded factual allegations of the complaint are accepted as true, and all reasonable inferences are drawn in favor of the claimant.  *Hutchinson*, 827 F.3d at 1359.

## II.    THE TRIAL COURT CORRECTLY HELD THAT IT LACKED SUBJECT MATTER JURISDICTION OVER RIMCO'S COMPLAINT

### A. CBP's Ministerial Act Of Collecting Antidumping And Countervailing Duties Is Not A Protestable Decision, Therefore Jurisdiction Under Section 1581(a) Does Not Exist

Rimco contends that CBP's ministerial act of complying with Commerce's liquidation instructions constitutes an unconstitutional exaction subject to challenge by protest. Blue Br. at 23. The seeds of the destruction of this argument are found in Rimco's citation to 19 U.S.C. § 1514 on the same page.

Section 1581(a) confers jurisdiction on the Court of International Trade to hear actions commenced to contest the denial of a protest under 19 U.S.C. § 1515. Section 1515 governs CBP's review of protests filed "in accordance with section 1514." Only a denied protest of a CBP decision described by one of the seven categories listed in section 1514(a) is capable of conferring section 1581(a) jurisdiction assuming it is not time-barred. "The introduction of section 1514(a) begins, however, by excepting certain determinations from its purview, most notably, antidumping and countervailing duty determinations reviewable pursuant to 19 U.S.C. § 1516a as referenced in subsection 1514(b)." Appx9.

When, as here, CBP simply follows Commerce's instructions, its role is ministerial. *See Mitsubishi Elec. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994). Under section 1514(a)(2), CBP does not determine the rate and amount

12

of antidumping or countervailing duties. *Id.* Further, CBP's role in liquidating entries with the assessment of antidumping and countervailing duties under section 1514(a)(5) is merely ministerial. *Id.*

Rimco points to section 1514(a)(3) to contend that CBP's liquidation in accordance with Commerce's instructions is a "charge or exaction" that can be protested. Blue Br. 23-24. Section 1514(a)(3) provides for "decisions of [CBP], including the legality of all orders and findings entering into the same as to . . . all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury." The rates set forth by antidumping and countervailing duty orders are not decisions of CBP and are not within the jurisdiction of the Treasury. *Mitsubishi*, 44 F.3d at 976. This is because "Commerce conducts the antidumping duty investigation, calculates the antidumping margin, and issues the antidumping duty order. Commerce then directs Customs to collect the estimated duties." *Id.*

Indeed, section 1514(a) was amended to exclude antidumping and countervailing duties from the list of protestable matters. *Id.* Thus, when the true substance of an action is actually a challenge to the findings and rates set by Commerce, there is no CBP "decision" available to protest.[5] "[S]ection 1514(a) does not embrace decisions by other agencies." *Mitsubishi*, 44 F.3d at 976.

---

[5] *But see Thyssenkrupp*, 886 F.3d at 1223-25. There the Court recognized that appellant's claim was not focused on the simple execution of Commerce's liquidation instructions but, instead, had required a decision by CBP as to the effect

Rimco's resort to *Swisher International Inc. v. United States*, 205 F.3d 1358 (Fed. Cir. 2000), and similar cases for the proposition that a protest is the proper vehicle to adjudicate constitutionality cannot save it from a lack of jurisdiction under section 1581(a), here. *See* Blue Br. 26-27. For example, in *Swisher*, this Court "found that the denial of a refund of the Harbor Maintenance Tax constituted a 'decision as to a charge or exaction" within the meaning of 19 U.S.C. § 1514(a)(3).'" Appx11-12. Thus, the decision fell within CBP's authority. So, too, *United States v. Fox River Butter Co.*, 20 C.C.P.A. 38, 45 (1932) (addressing tariff rates and investigations) and *Goldman v. United States*, 28 C.C.P.A. 162, 166 (1940) (duty rates and port restrictions for certain imported furniture) concern matters that had not been statutorily excluded from CBP's decision-making. Blue Br. 27.

Thus, where a CBP decision implicates a statute that a plaintiff believes is unconstitutional, the plaintiff can protest the decision to reach the constitutional issue. But this hinges on CBP's ability to make a protestable decision. As discussed above, antidumping and countervailing duty determinations are excluded from the list of protestable decisions. As a result, the requisite decision of CBP,

---

of subsequent liquidation instructions from Commerce on the same entries. *Id.* at 1224. In that context, this Court reinforced the principle that "the ministerial standard, in its ordinary meaning excludes actions requiring genuine interpretive or comparable judgment as to what is to be done." *Id.* at 1224-25.

described in section 1514(a), did not occur. Without such a protestable decision, jurisdiction cannot exist under section 1581(a). Therefore, the trial court's decision and judgment should be affirmed.

## B. Because Rimco's Remedy Under 28 U.S.C. § 1581(c) Is Not Manifestly Inadequate, Section 1581(i) Is Unavailable

"A party may not expand a court's jurisdiction by creative pleading." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018). Instead, to assess jurisdiction, this Court identifies the true nature of the action. *Thyssenkrupp*, 886 F.3d at 1223. Here, the trial court reviewed Rimco's complaint and determined that its true nature is "a challenge to the assessment of countervailing and antidumping duties in accordance with the rates established by Commerce and communicated to CBP in the liquidation instructions." Appx13.

Rimco disagrees that the true nature of its complaint claiming is a challenge to the antidumping and countervailing duty rates determined by Commerce and, instead, contends that its:

> suit does not contest the legality of those determinations, but addresses the effect of those determinations, specifically whether Customs' assessment of charges as high as 688% *ad valorem* of the value of the merchandise Rimco imported worked a constitutional injury on Rimco, through the imposition by the United States of an "excessive fine" in violation of the Eighth Amendment.

Blue Br. 31.

15

But this statement contradicts Rimco's admission that its "claims that the CVD and ADD rates assessed against it are unconstitutional 'excessive fines' *results from Commerce's decision to base the rates on AFA*."  Blue Br 10-11 (emphasis added).  Simply put, Rimco cannot escape the true nature of its action:  a challenge to the antidumping and countervailing duty rates established by Commerce.  Appx13, 19.

**1. Rimco Could Have Requested An Administrative Review By Commerce To Address The Level And Constitutionality Of The Countervailing And Antidumping Duty Rates Assessed Against Its Imports**

Rimco argues that the trial court's administrative pathway is unworkable. Blue Br. 10.  However, the administrative pathway for Rimco to have its grievance heard has been prescribed by Congress.  First, Congress offered an opportunity for interested importers to request administrative reviews of the countervailing and antidumping duty rates on its imports.  Appx13; 19 U.S.C. § 1677(9); 19 C.F.R. § 351.213(b); *Opportunity Notice*, 85 Fed. Reg. at 25,396–97.  During such administrative reviews, Rimco has an opportunity to provide information to Commerce as to its sales practices and whether it received subsidies, and receive assessment rates based upon the record information provided.   Appx13.

Next, if Rimco was unsatisfied with the outcome of such an administrative review, Rimco could commence an action in the trial court under section 1581(c) to challenge the outcome.  *See* 19 U.S.C. § 1516a; 28 U.S.C. § 1581(c).  When

Rimco declined to request administrative reviews, Commerce issued liquidation instructions to CBP to assess the entries at the antidumping and countervailing cash deposit rates in effect at the time of entry.  Appx14-15; *see* 19 C.F.R. 351.212(c).

### 2. Rimco Possessed Standing To Seek An Administrative Review By Commerce

Rimco contends that because it was not "an 'interested party' who was a 'party to the proceeding' it "would have lacked standing to commence or participate in any 28 U.S.C § 1581(c) lawsuit challenging the determination."  Blue Br. 15.  Rimco appears to be conflating the original investigation proceedings, which did not cover its entries, with the first period of review, which did cover its entries.  Through the *Opportunity Notice*, Rimco had standing to request a review of its entries and potentially obtain lower dumping and countervailing duty margins through its participation in and cooperation with the administrative review process.  Even though Rimco did not have its own rate, it was able to request a review of the rate applied to its entries.  And through that review could have argued that the All-Others and China-Wide rates were too high.  Through this process, after responding to Commerce's questionnaires and cooperating with Commerce's requests for information, after Commerce analyzed the information on the respective records, Rimco could have potentially obtained lower margins.

17

If the margin assessed in either administrative review was deemed excessive by Rimco, it could have asserted that its margin violated the Eighth Amendment. By declining to seek administrative reviews, Rimco denied itself the opportunity for Commerce to reassess its dumping behavior and level of subsidization and precluded the continued suspension of liquidation of its entries thereby leading to CBP's ministerial and unprotestable liquidation of the subject entries. Rimco's jurisdictional quandary is one of its own making.

### 3. Commerce Is The Proper Entity To Consider Rimco's Claims In The First Instance

Rimco notes that courts are able to hear unconstitutional administrative actions taken pursuant to legislation. Blue Br. 19-20. But to preserve its ability to seek judicial review of Commerce's rate determinations, there is a specific procedural process Rimco must follow. The first step is to exhaust its administrative remedies, which required Rimco to seek an administrative review before Commerce. "The doctrine of exhaustion of administrative remedies ... provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998) (citations omitted). "When administrative remedies have not been exhausted, 'judicial review of administrative action is inappropriate' since it is 'a general rule that courts should not topple over administrative decisions unless the administrative body not only

18

has erred but has erred against objection made at the time appropriate under its practice.'" *Id.* (citations omitted).

To excuse its failure to do so, Rimco argues that "Commerce has no institutional competence or expertise to determine constitutional questions, including those arising under the Eighth Amendment." Blue Br. 19. But this is placing the cart before the horse. Rimco presumes an Eighth Amendment dispute exists. However, Rimco's actual dispute is over the countervailing and antidumping cash deposit rates set by Commerce in the investigations and then applied by virtue of its automatic liquidation authority when no party requested first administrative reviews of either Order. Blue Br. 10-11 (Rimco's constitutional claim is based on Commerce's use of adverse facts available). And "[i]t has long been recognized that Commerce is the 'master' of the countervailing and antidumping duty laws and was entrusted by Congress with determining the appropriate countervailing and antidumping duties." Appx14. Thus, Commerce is the proper agency to hear Rimco's complaints. Appx15.

Without citing any support, Rimco simply speculates that "it would have been impossible for the agency to render a determination of constitutionality when wielding statutory power which expressly relieves it of the obligation to consider the 'commercial reality' of the interested party." Blue Br. 18. But there is no way to know what antidumping duty or countervailing duty rates would have been

19

assessed by Commerce if Rimco had requested and participated in administrative reviews of the Orders.  Instead, Rimco assumes that it would have received rates based upon adverse facts available.  But the cash deposit rates assigned during the investigation only became assessment rates because of Rimco's failure to request or participate in such administrative reviews.[6]

Recognizing that Congress's jurisdictional scheme requires Rimco to first seek an administrative review, Rimco argues that exhaustion of administrative remedies is not required for constitutional claims.  Blue Br 18.  However, "[i]f an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued."  Blue Br. 18 (quoting *Public Utilities Commission of State of California v. United States*, 355 U.S. 534, 539-40 (1958)).  And as Rimco concedes that "[w]here the constitutional challenge is to an administrative, rather than a legislative action, it may be more appropriate to encourage 'further factual development within the agency."  Blue Br. 27-28

---

[6] Under the statute, the results of Commerce's investigations are instructions to CBP setting cash deposit rates of estimated duties until such time as administrative reviews are conducted which set assessment rates.   If the assessed rate is higher than the cash deposit rate, with the exception of certain entries, the company owes the difference to the Government plus interest.  If the assessed rate is lower than the cash deposit rate, the Government refunds the difference to the company with interest.

(quoting *Thomson Consumer Elecs. v. United States*, 247 F.3d 1210, 1214 (Fed. Cir. 2001)).

As the trial court stated, "[w]hile Rimco makes this argument to suggest that its protest to CBP constituted the appropriate avenue to judicial review, this argument more appropriately supports requiring Rimco to raise this issue before Commerce, the agency that determined the allegedly unconstitutional assessment rates." Appx16. This is particularly so because "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Because "[a]ntidumping and countervailing duties are designed to offset sales at less than fair value and the effects of unfair subsidization, respectively," a record developed by Commerce is necessary to enable a court to evaluate "whether the duties are unconstitutionally disproportionate." Appx16-17.[7]

Had Rimco proceeded to administrative reviews before Commerce, participated in those administrative reviews and potentially received lower rates or potentially unwelcome rates that Commerce would have assessed in such hypothetical situations, then Rimco could have argued that these hypothetical rates were excessive and contravened the Eighth Amendment. Indeed, "[i]n the case of

---

[7] Because CBP's role in assessment of antidumping and countervailing duties at liquidation of Rimco's entries pursuant to Commerce's instruction is ministerial, there is no record to be developed.

uncooperative respondents, the discretion granted by the statute appears to be

particularly great, allowing Commerce to select among an enumeration of

secondary sources as a basis for its adverse factual inferences." *Ta Chen Stainless

Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1338-39 (Fed. Cir. 2002).

In pursuing its claims through administrative reviews, Rimco could have

obtained the results it seeks or secured the path for review of its claims by the

Court of International Trade.  Therefore, Rimco has not shown that administrative

reviews before Commerce would have been futile.  Accordingly, for the reasons

discussed above, Rimco was required to first seek administrative reviews with

Commerce before it could raise its claims before the Court of International Trade.

### 4.  Jurisdiction Under Section 1581(i) Is Unavailable

Although section 1581(i) jurisdiction is described as a broad residual grant

of jurisdiction, this Court's precedent is clear that the scope of section 1581(i) is

strictly limited.  *Erwin Hymer Group N. Am., Inc. v. United States*, 930 F.3d 1370,

1374 (Fed. Cir. 2019).  This limitation is necessary because "[a]n overly broad

interpretation of this provision, however, would threaten to swallow the specific

grants of jurisdiction contained within the other subsections and their

corresponding requirements." *Norman G. Jensen, Inc. v. United States*, 687 F.3d

1325, 1329 (Fed. Cir. 2012).

In reviewing section 1581(i) jurisdiction, the Court first determines whether jurisdiction was available under another subsection of section 1581. *Erwin Hymer*, 930 F.3d at 1375. Next, "if jurisdiction was available under a different subsection of § 1581, [the Court] "examine[s] whether the remedy provided under that subsection is manifestly inadequate." *Id.* Section 1581(i) jurisdiction is improper if the remedy under another subsection of section 1581 is not manifestly inadequate. *Id.* Finally, the burden is on Rimco to demonstrate "that another subsection is either unavailable or manifestly inadequate." *Sunpreme*, 892 F.3d at 1191.

The true nature of Rimco's action is a challenge to the antidumping and countervailing duty rates determined by Commerce. Appx13, 19; Blue Br. 10-11. As such, Rimco should have challenged Commerce's countervailing and antidumping duty determinations by timely seeking administrative reviews as provided by the *Opportunity Notice*. Therefore, section 1581(c) was available. For the reasons discussed above, the remedy available under section 1581(c) was not manifestly inadequate. Rimco cannot use section 1581(i) to avoid its failure to pursue the administrative avenue that was available.

Accordingly, the trial court's dismissal of this action for lack of subject matter jurisdiction should be affirmed.

## <u>**CONCLUSION**</u>

For the foregoing reasons, we respectfully request that judgment of the trial

court be affirmed.

> Respectfully submitted,
>
> BRIAN M. BOYNTON
> Principal Deputy Assistant Attorney
> General
>
> PATRICIA M. McCARTHY
> Director
>
> JUSTIN R. MILLER
> Attorney-In-Charge
> International Trade Field Office

By:    /s/ Claudia Burke
       CLAUDIA BURKE
       Assistant Director

| *Of Counsel* | /s/ Beverly A. Farrell |
|---|---|
| IAN A. McINERNEY | BEVERLY A. FARRELL |
| Office of the Chief Counsel for | Senior Trial Attorney |
| Trade Enforcement and Compliance | Civil Division, Dept. of Justice |
| U.S. Department of Commerce | Commercial Litigation Branch |
| | 26 Federal Plaza – Suite 346 |
| YELENA SLEPAK | New York, NY 10278 |
| FARIHA KABIR | Tel. (212) 264-9230 or 0483 |
| Office of Assistant Chief Counsel | Attorneys for Defendant-Appellee |
| International Trade Litigation | |
| U.S. Customs and Border Protection | |

Dated: February 15, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of February, 2023, a copy of the foregoing Brief for Defendant-Appellee was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ Beverly A. Farrell</u>
Senior Trial Attorney
International Trade Field Office
Civil Division
United states Department of Justice
26 Federal Plaza—Room 346
New York, New York 10278

CERTIFICATE OF COMPLIANCE PURSUANT TO FRAP 32(a)(7)(C)

| | |
|---|---|
| RIMCO, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

Appeal No. 22-2079

I, Beverly A. Farrell, a senior trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief, relying upon the Microsoft Word word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under Rule 32(a)(7)(B), and contains 5,078 words.

/s/ Beverly A. Farrell
Beverly A. Farrell