# United States Court of Appeals for the Federal Circuit

---

**RIMCO INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-2079

---

Appeal from the United States Court of International Trade in No. 1:21-cv-00537-MAB, Chief Judge Mark A. Barnett.

---

Decided: April 8, 2024

---

JOHN M. PETERSON, Neville Peterson LLP, New York, NY, argued for plaintiff-appellant. Also represented by PATRICK KLEIN; RICHARD F. O'NEILL, Seattle, WA.

BEVERLY A. FARRELL, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER; FARIHA KABIR, YELENA SLEPAK, Office of Assistant Chief Counsel, Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY; IAN ANDREW

MCINERNEY, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

————————————

Before PROST, TARANTO, and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Importer Rimco Inc., appeals the United States Court of International Trade's dismissal for lack of subject matter jurisdiction over an action seeking judicial review of a denied protest. Rimco asserts the Court of International Trade's exclusive subject-matter jurisdiction to review denial of protests pursuant to 28 U.S.C. § 1581(a), or alternatively, residual jurisdiction pursuant to 28 U.S.C. § 1581(i). Because Customs and Border Protection's assessment of countervailing and antidumping duties is not a protestable decision, and because jurisdiction under 28 U.S.C. § 1581(c) would have been available if Rimco had not failed to exhaust the appropriate administrative remedies, we affirm the CIT's dismissal for lack of subject matter jurisdiction.

I

A

Antidumping duties (AD) and countervailing duties (CVD) work to remedy domestic injuries caused by goods imported at unfair prices or receiving countervailable subsidies from foreign governments. *Guangdong Wireking Housewares & Hardware Co. v. United States*, 745 F.3d 1194, 1196 (Fed. Cir. 2014). The U.S. Department of Commerce and the U.S. International Trade Commission are the agencies charged with conducting CVD and AD investigations. 19 U.S.C. §§ 1671, 1673. During these investigations, Commerce determines whether, and to what extent, merchandise imported into the United States is being sold

at prices below fair value, or benefits from countervailable foreign subsidiaries. 19 U.S.C. §§ 1671d, 1673d.

After concluding an investigation, Commerce determines the appropriate AD and CVD rates required to address any domestic injuries or unfair practices related to certain foreign exporters, producers, or governments. 19 U.S.C. §§ 1671d(c)(1), 1673d(c)(1). These rates can be established for specific entities or on a country-wide basis depending on the source and extent of the harm. 19 U.S.C. §§ 1671d(c)(1)(B), 1673d(c)(1)(B). Congress has supplied Commerce with a statutory scheme that provides methods for establishing AD and CVD rates for individually and non-individually investigated entities, as well as an "all-others" rate based on multiple considerations, including facts available. *See* 19 U.S.C. §§ 1671d(c)(5), 1673d(c)(5), 1677e.

This court has recognized that Commerce has "broad authority to interpret . . . and carry out th[is] statutory mandate." *Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997). However, its methodology must nevertheless be reasonable. *See Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1373 (Fed. Cir. 2013) (quoting "reasonable method" requirement contained in 19 U.S.C. § 1673d(c)(5)(B)).

After Commerce makes final AD and CVD determinations, it publishes the rates in a final order. In accordance with rulemaking under the Administrative Procedure Act (APA) § 3, 5 U.S.C. § 553, Commerce then provides notice of opportunity for interested parties, such as importers, to request and/or participate in administrative review of the final orders. At the close of the notice of opportunity period, Commerce issues liquidation instructions, directing the U.S. Customs and Border Protection (Customs) to assess entries subject to the orders at the final published respective rates.

B

On March 28, 2019, after completing CVD and AD investigations, Commerce published final CVD and AD determinations on certain steel wheels from China. *See generally Certain Steel Wheels From the People's Republic of China: Final Affirmative Countervailing Duty Determination,* 84 Fed. Reg. 11,744 (Dep't Commerce Mar. 28, 2019) (Final CVD Determination); *Certain Steel Wheels From the People's Republic of China: Final Determination of Sales At Less-Than-Fair-Value,* 84 Fed. Reg. 11,746 (Dep't Commerce Mar. 28, 2019) (Final AD Determination). In its Final CVD Determination, Commerce established an entity rate of 457.10 % for two mandatory respondents based on total adverse facts available, as authorized under 19 U.S.C. § 1677e(b), and an all-others rate of 457.10 %, as authorized under 19 U.S.C. § 1673d(c)(5)(A). *See Certain Steel Wheels From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 84 Fed. Reg. at 11,745. Because no companies participated in the AD investigation, Commerce established a China-wide entity rate of 231.08 % for the Final AD Determination. *See Certain Steel Wheels From the People's Republic of China: Final Determination of Sales At Less-Than-Fair-Value*, 84 Fed. Reg. at 11,747.

On May 24, 2019, Commerce issued the AD and CVD orders in a single publication. *Certain Steel Wheels From the People's Republic of China; Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 24,098–24,100 (Dep't Commerce May 24, 2019).

On May 1, 2020, Commerce published a notice of opportunity to allow requests for administrative review of the AD order and CVD order for the periods August 31, 2018, through December 31, 2019, and October 30, 2018, through April 30, 2020, respectively. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review,* 85 Fed.

Reg. 25,394, 25,396 (Dep't of Commerce May 1, 2020). This notice provided interested parties, with an opportunity to participate in the administrative review process to ensure that their entries from the reviewable time periods were assessed at the proper rates during liquidation. As is relevant to this appeal, Rimco, a North Dakota-based importer and reseller of wheels subject to the orders, is an interested party to which the notice applied. *See* 19 U.S.C. 1677(9)(A) (defining "interested party" to include "the United States importer[] of subject merchandise"). Yet, neither Rimco, nor any other interested party, requested administrative review of any transactions covered by the respective periods of review.

Because no interested party requested administrative review of the AD or CVD orders, Commerce issued liquidation instructions directing Customs to assess entries subject to the orders at the final published rates. During liquidation, Customs then applied the instructed rates when assessing goods subject to the respective orders. Rimco made various consumption entries of goods subject to liquidation in accordance with the AD and CVD orders.

On March 16, 2021, Rimco filed a protest challenging Customs' assessment of AD and CVD on its imported goods as "'excessive fines' in contravention of the Eighth Amendment." Appellant's Br. at 5. On March 30, 2021, Customs denied the protest on the basis that "19 U.S.C. [§] 1514 does not authorize protests or petitions against Commerce calculations or findings." Appellee's Br. at 8. Rimco then filed an action before the U.S. Court of International Trade (CIT), seeking judicial review of Customs' denial of protest. Rimco asserted the CIT's exclusive jurisdiction under 28 U.S.C. § 1581(a), or alternatively, 28 U.S.C. § 1581(i).

The Government moved to dismiss Rimco's action for lack of subject matter jurisdiction and failure to state a claim. On July 8, 2022, the CIT granted the Government's motion on jurisdictional grounds and dismissed the action

with prejudice.[1] J.A. 1. The CIT held that it lacked jurisdiction under § 1581(a) because Customs' ministerial application of AD and CVD rates, pursuant to Commerce's liquidation instructions, was not a protestable decision. J.A. 10–12. Instead, the CIT found that the true nature of Rimco's action was "a challenge to the countervailing and antidumping duty rates set by Commerce in the respective orders . . . ." J.A. 19. Therefore, the CIT concluded that it lacked jurisdiction under § 1581(i) "because jurisdiction pursuant to section 1581(c) was available and would not have been manifestly inadequate" had Rimco sought administrative review of Commerce's AD and CVD determinations. J.A. 13.

Rimco appeals the CIT's dismissal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II

We review a dismissal granted by the CIT for lack of subject-matter jurisdiction de novo as a question of law. *Hutchinson Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1359 (Fed. Cir. 2016).

The burden of establishing jurisdiction is on the party invoking it. *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). The well-pleaded factual allegations of the complaint are accepted as true, and all reasonable inferences are drawn in favor of the claimant. *Hutchinson*, 827 F.3d at 1359.

## III

The CIT's general jurisdiction is statutorily defined under 28 U.S.C. § 1581. *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 358 (Fed. Cir. 1992). The "particular

---

[1] Because the CIT dismissed the action for lack of subject-matter jurisdiction, it did not reach the motion to dismiss for failure to state a claim. J.A. 3 n.1.

laws over which the Court of International Trade may assert jurisdiction" are further specified in each subsection of § 1581. *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1555 (Fed. Cir. 1988). Relevant to this appeal are subsections (a), (c), and (i).

Section 1581(a) of title 28 grants the CIT "exclusive jurisdiction [over] any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]." Section 1515 of title 19 governs Customs' review of "a protest . . . filed in accordance with section 1514 of this title." Importantly, § 1514 provides a limited list of seven circumstances in which a party may file a "protest against decisions of Customs." 19 U.S.C. § 1514(a)(1)–(7). Because "[s]ection 1514(a) applies exclusively to *Customs* decisions . . . [it] does not embrace decisions by other agencies." *See Mitsubishi Elec. Am., Inc. v. United States*, 44 F.3d 973, 976 (Fed. Cir. 1994) (emphasis added and internal quotations omitted).

Section 1581(c) provides the CIT with "exclusive jurisdiction [over] civil actions commenced under [19 U.S.C. § 1516a]." Section 1516a specifically governs judicial review of Commerce's determinations in antidumping and countervailing duty proceedings.

Section 1581(i), commonly referred to as the CIT's "residual" grant of jurisdiction, "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (citing *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002)). The party asserting § 1581(i) jurisdiction has the burden to show that such alternative remedy would be manifestly inadequate. *Id.*

Claimants seeking judicial review by the CIT may not "ignore the precepts of subsection 1581 and attempt[] to circumvent" Congress' clear statutory procedures and

safeguards. *Nat'l Corn Growers*, 840 F.2d at 1556. Similarly, claimants are prohibited from using creative pleading to expand the CIT's statutory jurisdiction. *Norsk Hydro Can.*, 472 F.3d at 1355. Thus, when asserting § 1581 jurisdiction, "mere recitation of a basis for jurisdiction, by either a party or a court, cannot be controlling." *Id.* Instead, we must look at the facts asserted in the pleadings and determine the true nature of the action. *See Hutchinson*, 827 F.3d at 1360. This factual inquiry requires our court to identify the particular agency action underlying the claimed harm, so that we may determine which subsection of § 1581 provides the CIT with proper jurisdiction. *Id.*

### A

Rimco asserts that the CIT has exclusive jurisdiction under § 1581(a), and argues the CIT erred in finding "that there was no 'decision' by [Customs] against which a protest would lie." Appellant's Br. at 29. In support of its position, Rimco alleges that Customs' "liquidation decision is protestable, even if it [is] . . . carried out ministerially." Appellant's Br. at 29. We disagree.

Contrary to Rimco's assertion, when Customs' role is purely ministerial, liquidation of entries subject to AD and CVD orders is "not a 'decision' under § 1514(a)." *Thyssenkrupp Steel N. Am., Inc. v. United States*, 886 F.3d 1215, 1224 (Fed. Cir. 2018) (internal citation omitted). A protestable decision under § 1514(a) requires Customs to have "engage[d] in some sort of decision-making process." *Indus. Chems., Inc. v. United States*, 941 F.3d 1368, 1371 (Fed. Cir. 2019) (quoting *U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed. Cir. 1997), *aff'd*, 523 U.S. 360 (1998)). Conversely, this court has consistently held that "'merely ministerial' actions are not protestable under [§] 1514." *Id.* (quoting *Mitsubishi*, 44 F.3d at 977). This is because unlike typical § 1514(a) decisions that involve substantive determinations, Customs lacks discretion when "merely follow[ing] Commerce's [liquidation] instructions."

*Mitsubishi*, 44 F.3d at 977; *see also ARP Materials, Inc. v. United States,* 520 F. Supp. 3d 1341, 1358 (Ct. Int'l Trade 2021), *aff'd,* 47 F.4th 1370 (Fed. Cir. 2022) ("Customs' role in collecting those duties was ministerial rather than a decision under section 1514(a)." (internal quotations omitted)). Because Customs cannot "modify . . . [Commerce's] determinations, their underlying facts, or their enforcement," its liquidation of entries subject to AD and CVD orders cannot be protested. *Mitsubishi*, 44 F.3d at 977 (cleaned up).

While this court has recognized a limited range of circumstances in which Customs' underlying liquidation pursuant to AD or CVD orders may be subject to protest, we find no such circumstance here. *See, e.g.*, *Koyo Corp. of U.S.A. v. United States*, 497 F.3d 1231, 1239 (Fed. Cir. 2007) (holding that deemed liquidation under 19 U.S.C. § 1504(d) is subject to protest when Customs fails to execute liquidation instructions); *Cemex, S.A. v. United States*, 384 F.3d 1314, 1324 (Fed. Cir. 2004) (concluding that Customs made a particular "decision" when it erroneously recognized a deemed liquidation at an "as entered" rate instead of applying the final rate). Rimco has not alleged that Customs made any substantive determinations or undertook any discretionary actions that would constitute § 1514(a) decisions. Instead, Rimco asserts that Customs was "required by law to go through the liquidation process" and simply acted on Commerce's liquidation instructions that it was "bound by statute to carry out." Appellant's Br. at 29.

Accordingly, because Customs' role in liquidating entries subject to the AD and CVD orders was merely ministerial and required no substantive determinations, the CIT properly determined that there was no protestable decision under § 1514(a). Therefore, the CIT lacks § 1581(a) jurisdiction over Rimco's action.

B

Rimco alternatively argues that the CIT erred in finding that it lacked residual jurisdiction under § 1581(i). Whether a party may properly invoke § 1581(i) is a two-step inquiry. *See Erwin Hymer Grp. N. Am., Inc. v. United State*s, 930 F.3d 1370, 1375 (Fed. Cir. 2019). First, we determine whether jurisdiction under a different subsection of § 1581 could have been available, and second, if such jurisdiction was available, we ask whether the provided remedy would have been manifestly inadequate. *Id.*

Because the availability of jurisdiction under other subsections of § 1581 depends on the particular type of agency action challenged, we must first determine the true nature of an action. *See Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008) (affirming the trial court's decision to look to the true nature of the action in determining jurisdiction). The CIT concluded that the true nature of Rimco's action was to challenge Commerce's AD and CVD rate determinations. We agree.

Although Rimco contends that this suit "is not a challenge to . . . any Commerce determination," Appellant's Br. at 30, this conclusory statement directly contradicts Rimco's own argument. Rimco's opening brief explicitly states that "[its] claims that the CVD and AD[] rates assessed against it are unconstitutional 'excessive fines' *results from Commerce's decision* to base the rates on [adverse facts available]." Appellant's Br. at 10–11 (emphasis added). Rimco also posits that some of Commerce's final determinations were not based on "lawful calculated rate[s]." *Id.* at 14. Further, most of Rimco's factual allegations relate to Commerce's AD and CVD investigations and subsequent final rate determinations. Thus, in view of the totality of Rimco's allegations, the true nature of its action is to challenge Commerce's AD and CVD rate determinations.

Interested parties are directed to raise challenges to Commerce's AD and CVD determinations via

administrative review proceedings governed by § 1516a of title 19. Subsequent judicial review of such proceedings is available under the CIT's § 1581(c) exclusive jurisdiction. Rimco alleges that it would have lacked standing to pursue § 1581(c) jurisdiction because it was not a party to Commerce's earlier AD and CVD investigations. Appellant's Br. at 14–15. But this argument provides no explanation as to why, in light of Commerce's notice of opportunity, Rimco failed to seek administrative review of the orders. Because Rimco, as an interested party, had the opportunity to seek administrative review of Commerce's AD and CVD determinations, jurisdiction under § 1581(c) would have been available but for Rimco's own failure to pursue the proper administrative remedy.

C

Because jurisdiction was available under § 1581(c), the CIT's residual jurisdiction under § 1581(i) is unavailable unless Rimco can show that the remedy afforded by subsection (c) would be manifestly inadequate. A remedy is not inadequate simply because a party believes such remedy is unavailable. *Hartford Fire Ins. Co.* 544 F.3d at 1294. Rather, a manifestly inadequate remedy requires "an exercise in futility, or 'incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'" *Id.* (quoting Oxford English Dictionary (2d ed. 1989).

Rimco contends that the CIT's proposed administrative pathway is not a workable option for importers to raise constitutional claims. Appellant's Br. at 10. In an attempt to frame the § 1581(c) remedy as inadequate, Rimco alleges that Commerce "lacks institutional competence to judge the constitutionality of its own determinations" and therefore argues that it was not required to exhaust its administrative remedies. Appellant's Br. at 16. We disagree with this argument for two reasons.

First, Commerce is required to review the statutory appropriateness of its AD and CVD rates, including those based on adverse facts available. During the administrative review process, Commerce would have considered facts to determine whether its rates were proportional to the harm they were intended to address and "necessary to serve the purpose of deterrence." *See BMW of N. Am. LLC v. United States,* 926 F.3d 1291, 1300 (Fed. Cir. 2019) (noting that because rates based on adverse facts available (AFA) work to incentivize cooperation, "an unusually high rate is permissible when it is 'necessary to serve the purpose of deterrence"). Furthermore, because the test for excessiveness turns on a proportionality determination, *see United States v. Bajakajian*, 524 U.S. 321, 334 (1998) ("[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality"), Commerce could typically dispose of the constitutional issue by reviewing the rates for statutory compliance (i.e., finding the rates not excessive). *See KYD, Inc. v. United States,* 607 F.3d 760, 768 (Fed. Cir. 2010) ("[A]n AFA [anti]dumping margin determined in accordance with the statutory requirements is not a punitive measure, and the limitations applicable to punitive damages assessments therefore have no pertinence to duties imposed based on lawfully derived margins such as the margin at issue in this case."). Rimco itself concedes "that a correctly calculated CVD or AD[] rate would not be susceptible to constitutional challenges under the Eighth Amendment." Appellant's Br. at 14 n.10. And when "an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued." *Pub. Utils. Comm'n of State of Cal. v. United States*, 355 U.S. 534, 539–40 (1958). Therefore, because Commerce could have removed the constitutional issue by addressing the statutory appropriateness of its rate determinations, administrative review was the proper remedy.

Second, this court has rejected the argument that it would necessarily be futile to seek administrative remedies when an agency is unable to make constitutional findings. *See Bowling v. McDonough*, 38 F.4th 1051, 1057–59 (Fed. Cir. 2022) (holding that it would not have been futile to raise constitutional challenges before an agency, even if the agency could not address the constitutional issue). As we explained in *Bowling*, this is because the agency will nevertheless serve its immensely useful record-development and fact-finding functions. *See Bowling*, 38 F.4th at 1059; *see also Parisi v. Davidson*, 405 U.S. 34, 37 (1972) ("The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."). So even if there were a scenario, however unlikely, where a calculated rate might comply with statutory reasonableness but nonetheless violate the excessive fines component of the Eighth Amendment, administrative exhaustion would still be required. Because administrative review could have established an invaluable record as to the factual basis for Commerce's AD and CVD determinations, irrespective of the constitutionality issue, it would not have been futile for Rimco to seek such remedy.

Rimco could have sought § 1516a administrative review to sufficiently challenge Commerce's AD and CVD determinations. Had Rimco been dissatisfied with Commerce's administrative review determination, it could have rightfully sought judicial review on the record under the CIT's exclusive jurisdiction. This is the exact statutory process outlined by Congress in § 1581(c). As discussed above, it is neither unworkable, nor futile.

Because Rimco has failed show that the available remedy provided by § 1581(c) would have been manifestly inadequate, § 1581(i) jurisdiction is improper. As noted by the CIT, "Rimco failed to pursue the administrative avenue available to it and thereby missed its opportunity to

challenge the rates set by Commerce. It cannot avoid the consequences of that failure through the exercise of the court's section 1581(i) jurisdiction." J.A. 19.

## IV

Because Customs' ministerial assessment of antidumping and countervailing duties is not a protestable decision, and because jurisdiction under 28 U.S.C. § 1581(c) would have been available and not manifestly inadequate if Rimco had not failed to exhaust administrative remedies, we affirm the Court of International Trade's dismissal for lack of subject matter jurisdiction.

**AFFIRMED**